1
2
3
4
5
6

IN THE UNITED DISTRICT COURTS
IN THE EASTERN DISTRICT OF WASHINGTON
SPOKANE DIVISION

7

8

ANDREY GERMANOVICH, an individual,

CASE:

9

Plaintiff,

10

v.

COMPLAINT
[JURY DEMAND]

11

CENLAR, FSB; LAKEVIEW LOAN
SERVICING, LLC;  FEDERAL NATIONAL

12

MORTGAGE ASSOCIATION, MTC
FINANCIAL INC., d/b/a TRUSTEE CORPS,

13

and ALAN BURTON, in his individual capacity
and as Vice President of MTC FINANCIAL

14

INC., d/b/a TRUSTEE CORPS, and MTC
FINANCIAL INC., d/b/a TRUSTEE CORPS;

15
16

 Defendants.

17

18

## **COMPLAINT**

19

Plaintiff ANDREY GERMANOVICH, by and through the undersigned counsel, hereby

20

sues CENLAR, FSB; LAKEVIEW SERVICING LLC, FEDERAL NATIONAL MORTGAGE

21

ASSOCIATION; MTC FINANCIAL, d/b/a TRUSTEE CORPS,  and ALAN BURTON,

22

individually and as Vice President of MTC FINANCIAL d/b/a TRUSTEE CORPS, and alleges

23

the following:

24

COMPLAINT

1

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

## I. INTRODUCTION & IDENTIFICATION OF PARTIES

1.      This case is about the Defendants' fraudulent practices within their specialized business of lending, securitizing, owning, servicing, and collecting debt on mortgages secured by real property.  The Defendants' businesses are interconnected and involving not only the lending of funds through securitization, servicing of mortgage loans, debt collection, but also foreclosure of real property used as collateral of these mortgage loans. Each defendant's operation makes up a necessary part of the overall vertical integration known as mortgage lending. For example, defendant Federal National Mortgage Association's expertise is the purchase of mortgage loans through securitization, whereas Cenlar FSB, and Lakeview Servicing LLC, serve as the servicing arm of this government sponsored entity, and defendants Alan Burton, and his company, MTC Financial d/b/a Trustee Corps, on behalf of Cenlar and Lakeview, run the foreclosing machinery for those loans that have gone into default. There exists an interdependence for these Defendants to complete their mutual objectives in securitizing, servicing, and recovery of the investment through foreclosure of the collateral.

2.      Plaintiff Andrey Germanovich, hereinafter "Germanovich" is a resident of Spokane, Washington. He purchased his primary residence located at 4710 South Pender Lane, Spokane, Washington ("the Property"), and borrowed $180,000, in July of 2005, from Indymac Bank, F.S.B. The loan was secured by the Property.

3.      Defendant Cenlar F.S.B. ("Cenlar"), based out of New Jersey, is a federally chartered savings banks which provides mortgage loan servicing and subservicing. It served as the loan servicer on behalf of Defendant Federal National Mortgage Association ("Fannie Mae"). Cenlar purportedly acts as attorney in-fact for Defendant Lakeview Servicing LLC, the servicer of Plaintiff's loan.  Cenlar was directly involved in the nonjudicial foreclosure of the Property.

4.      Defendant Lakeview Servicing, LLC ("Lakeview"), operating out of Coral

COMPLAINT

2

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

Gables, Florida, is the fourth largest mortgage loan servicer in the nation. Lakeview partners with several loan servicers, including defendant Cenlar, in the servicing of the Germanovich loan and the foreclosure of the Germanovich Property.

5.      Defendant  MTC Financial, Inc., d/b/a Trustee Corps ("Trustee Corps") is a Washington corporation specializes in nonjudicial foreclosures of real property. Trustee Corps acts as the foreclosing agent of Defendants Cenlar and Lakeview and handled the trustee's sale of the Germanovich Property in 2018.

6.      Defendant Alan Burton is the Vice President of Trustee Corps. He has personal knowledge of the foreclosure of the Property and was responsible for signing certain documents resulting in the trustee's sale conducted by Trustee Corps where the Property was sold in April of 2018 to a third party.

7.      Defendant Federal National Mortgage Association ("Fannie Mae") is a Government Sponsored Entity headquartered in Washington D.C. Fannie Mae chartered by Congress to stimulate home ownership and provide liquidity to the mortgage market. Fannie Mae does not originate or loan money directly but buys and guarantees mortgage loans in the secondary market. In this case, in post-sale documents, Fannie Mae was identified by Cenlar, Lakeview, Trustee Corps and Burton to be the Lender/Creditor of the loan that Plaintiff obtained in 2005.

## II. JURISDICTION AND VENUE

8.      The Court has jurisdiction over the Defendants because Plaintiff alleges violations of the Racketeering Influenced & Corrupt Organizations Act, 18 U.S.C §1962 et seq., and §1964 et seq.

9.      Alternatively, in the event that Defendants Alan Burton and Trustee Corps are no longer parties to this litigation, the Court has diversity jurisdiction over the remaining parties pursuant to 28 U.S.C. §1332 as they are citizens of different states and the amount of controversy claimed by Plaintiff exceeds $75,000.

COMPLAINT                                                    3

10.     Venue is properly in the Eastern District of Washington, Spokane because the Plaintiff resides here, and because the alleged acts and omissions occurred in this District.

### III. FACTUAL ALLEGATIONS

11.     In 2005, Plaintiff borrowed $180,000 from Indymac Bank and the loan was secured by the Property, which he used as his primary residence. Plaintiff was never informed that Indymac was seized by the FDIC or that his loan might have been securitized. He was relegated to deal with various loan servicers including Lakeview. In October of 2017, Trustee Corps transmitted a Notice of Default to Plaintiff, declaring the loan to be default and scheduling a trustee's sale. In the Notice, Trustee Corps identified the beneficial owner of the Deed of Trust to be "Lakeview Loan Servicing, LLC by Cenlar FSB as Attorney in Fact" (**Exhibit A**). Accompanying the Notice of Default is a Foreclosure Loss Mitigation Form on Cenlar's letterhead (**Exhibit B**). Nowhere in these foreclosure documents was Fannie Mae ever disclosed as an entity having ownership over the loan.

12.     Defendant Alan Burton signed and caused for the Notice of Trustee's Sale, dated November 21, 2017, to be recorded in the Public Records of Spokane County, Washington, setting the auction sale for April 6, 2018. The Notice of Trustee's Sale identified Lakeview Loan Servicing LLC as the "Current Beneficiary" with the business address of Cenlar (**Exhibit C**). Neither the Notice of Default nor the Notice of Trustee's Sale list the balance owed on the loan for purpose of the auction sale.

13.     Plaintiff commenced a civil suit in the Superior Court of Spokane County against defendants Burton, Trustee Corps, Cenlar and Lakeview as defendants based on their conduct within the nonjudicial foreclosure sale and seeking redress under the Washington Deed of Trust Act. Defendants Cenlar and Lakeview were dismissed from the lawsuit but Defendants Burton and his company, Defendant Trustee Corps, and one other defendant remain in the state court litigation under case number 20-2-01090-32, and this matter is still pending.

14.     Trustee Corps sold the Property to one Byron Kreck for $325,000; it issued a

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

Trustee Certificate of Sale/Receipt listing five separate checks received from Kreck totaling $325,000 (**Exhibit D**), evidencing that Byron Kreck was the successful bidder for the Property..

15. On April 11, 2018, Defendant Alan Burton signed and caused to be recorded the Trustee's Deed Upon Sale. The Trustee's Deed again identifying "Lakeview Loan Servicing, LLC by Cenlar FSB as Attorney in Fact, *being then the holder of the indebtedness secured by said Deed of Trust*" and declaring that the sum of $325,000 constituted "the satisfaction in full of the obligation then secured by said Deed of Trust, together with fees, costs, and expenses as provided by statute." (**Exhibit E**), emphasis added. [1]

16. On May 30, 2018, a Notice of Deposit of Surplus Funds from Trustee's Sale Pursuant to RCW 61.24.080, was filed under case number 18202444-1, in the Superior Court of Spokane County, on behalf of Trustee Corps. This document cites to the auction sale date, the Trustee's Deed, as well as the following disclosure:

> At the time of sale, the obligation secured by the Deed of Trust amounted to $169,566.16. The cost of filing this deposit is $240.00. The attorney fees are $800 and expenses are $104.16 for mailing. **The surplus deposited herewith is $154,289.68**

(**Exhibit G**). Other than the information represented within the Notice of Deposit of Surplus Funds, the Defendants did not disclose the opening bid or how it was computed up, or the entity to whom the proceeds were remitted.

17. According to this Notice of Deposit of Surplus Funds, the proceeds of the foreclosure sale ($325,000) were more than enough to pay the balance owed ($169,566.16) in full, as well as the costs associated with foreclosure sale ($1,144.16). Additionally, Plaintiff was due a refund in the amount of $154,289.69.

18. Subsequently, in 2019, Plaintiff received, via USPS mail, an IRS Form 1099-C entitled "Cancellation of Debt" where he is listed as the "Debtor." This document identifies, for the first time, defendant Fannie Mae as the "Creditor" with the address of 3900 Wisconsin

---

[1] Alan Burton later recorded a Corrective Trustee's Deed (**Exhibit F**), to correct the Notice of Trustee's Sale recording date and auditor number. All other aspects of the original Trustee's Deed remain unchanged.

COMPLAINT

5

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

Avenue N.W., Washington D.C 20016."

19.      Form 1099-C has seven (7) boxes. In Box 1, the "Date of identifiable event" is April 16, 2018. In Box 2, the "Amount of Debt Discharged" is listed as $152,332.91. In Box 6, the "Identifiable Event Code" is specified as "D" and in In Box 4, the "Debt description" is the address for the Property. In Box 7, the "Fair market value of property" is specified as "0.00" (**Exhibit H, Form 1099-C**). Plaintiff learned that the buyer, Byron Krech, resold the Property shortly after buying it at auction, for $524,900, an indicator of the Property's Fair Market Value.

20.      Form 1099-C also contains "Instructions to Debtor" which explains that Code D is for "foreclosure election" and " . . . [g]enerally, the gross foreclosure bid is considered to the FMV [fair market value]." The 1099-C also carries this warning:

> This is important tax information and is being furnished to the IRS. *If you are required to file a return, a negligence penalty or other sanctions may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported.*

(**Exhibit H**). The gross foreclosure bid, according to the Trustee's Deed is $325,000, which is not accurately reported in Form 1099-C.

21.      The Defendants also sent Plaintiff IRS Form 1099-A via USPS mail, entitled "Acquisition or Abandonment of Secured Property." There are five (5) boxes on Form 1099-A. In Box 1, the date of April 6, 2018, appears, which is the auction sale date. In Box 2, the "Balance of principal outstanding" is shown as $152,332.91, and in Box 4, the "Fair market value" is stated as $325,000. In Box 5, the box is checked to show that "the borrower was personally liable for repayment of the [sic]" (**Exhibit I, Form 1099-A**).

22.      The Defendants sent Plaintiff IRS Form 1099-B, "Mortgage Interest Statement" via USPS mail. However, in this Form, the Recipient/Lender is now identified as Cenlar Loan Administration and Reporting, with its address in Ewing, New Jersey. The "outstanding mortgage principal as of 1/1/2018" is listed as $152,332.91. Form 1099-C also informs $168.45 of "Late Charges Paid" and "Payment Applied" in the amount of $152,332.90. Furthermore, while Plaintiff did not make any payment in the year of 2018, Form 1099-B indicates the amount

COMPLAINT                                          6

of $168.45 was "Mortgage interest received from payer(s)/borrower(s)." (**Exhibit J, Form 1099-B**). The Balance Principal Outstanding stated in Forms 1099 of $152,332.90 directly contradict the balance of the loan as reported by the Notice of Deposit of Surplus Funds in the amount of $169,566.16.

23.     The law requiring 1099-C filings is codified in the Internal Revenue Code, stating:

(a) In general. Any applicable entity which discharges (in whole or in part) the indebtedness of any person during any calendar year shall make a return (at such time and in such form as the Secretary [of the Treasury] may by regulations prescribe) setting forth-

(1) the name, address, and [Taxpayer Identification Number] of each person whose indebtedness was discharged during such calendar year,

(2) the date of the discharge and the amount of the indebtedness discharged, and

(3) such other information as the Secretary may prescribe.

24.     Defendants issued Forms 1099-C and 1099-A to Plaintiff, whereupon Defendant Fannie Mae is identified as Creditor and Lender. This makes Fannie Mae an "applicable entity" as defined in I.R.C §6050P(c )(1) of the Code, and Plaintiff is a "person" under §7701(a)(1). The Regulation defines an "identifiable event" as a "discharge of indebtedness pursuant to an agreement between an applicable entity and a debtor to discharge indebtedness at less than full consideration." 26 C.F.R. §1.6050P-1(b)(2)(i)(F). Section D of 26 C.F.R. §1.6050P-1 provides for the cancellation or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the creditor's right to pursue collection of the indebtedness[;]".

25.     IRS publications pertaining to 1099-C forms provide that financial institutions must file a 1099-C form pertaining to debt cancellation events. A debt cancellation event includes: "A cancellation or extinguishment when the creditor elects foreclosure remedies that by law end or bar the creditor's right to collect the debt. This event applies to a mortgage lender or holder who is barred by local law from pursuing debt collection after a 'power of sale' in the mortgage or deed of trust is exercised." In this case, the Defendants' IRS 1099 Forms

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

fraudulently reported a debt cancellation event and an amount of indebtedness being "cancelled" when the debt was paid in full, and the Plaintiff was due a surplus. Additionally, the amount of the debt cancellation as reported by the Defendants cannot be reconciled with information the Defendants reported elsewhere, including the Notice of Deposit of Surplus Funds that they filed in Spokane County Superior Court.

26.     IRS Form 1099-C further conflicts with other foreclosure documents issued by the Defendants in which the Beneficiary of the Deed of Trust and Note Owner/Holder is identified as defendant "Lakeview Loan Servicing, LLC, by Cenlar, FSB, as Attorney in Fact." For example, the Trustee's Deed executed by Defendant Alan Burton declares that Lakeview was the "then holder of the Indebtedness secured by said Deed of trust, delivered to said Trustee a written request directing said Trustee or his authorized agent to sell the described property in accordance with law and terms of said Deed of Trust." (**Exhibit F**).

27.     The IRS 1099 Forms issued by the Defendants contain fraudulent information as they identify a Lender/Creditor which is foreign to the transaction and has never appeared in any of the title-related or foreclosure-related documents recorded in the public record of Spokane County where the Property is located. The Forms represent a loss sustained by the Creditor/Lender when there was none. The documents also raise the question of whether Defendants Burton and Trustee Corps properly remitted payment in satisfaction of the balance owed on the loan to the entity which owns the loan.

28.     Upon receipt of the 1099 Forms, Plaintiff became extremely distressed as he understood that the  information reported by the Defendants could expose him to a tax liability in the amount of $152,332.91 because such amount was "cancelled" by the "Creditor" identified a Fannie Mae. Plaintiff is fraught with anxiety as he has never been able to confirm the entity that actually owns the loan and whether the sale proceeds of his Property were paid to this entity, ending his personal liability once and for all. Plaintiff tried unsuccessfully to figure out on his own how the Defendants came up with the figure of $152,332.91, when the Defendants' Notice

COMPLAINT

8

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

of Deposit of Surplus Funds from Trustee's Sale says the loan was paid in full.

29.     Because Plaintiff had not received any mortgage statements from Lakeview or Cenlar for nearly a year, because Defendants Trustee Corps and Alan Burton did not provide him with the breakdown of the principal owed and all foreclosure related costs, and because Fannie Mae, with whom Plaintiff never had any dealing, is disclosed as the Creditor/Lender of the loan, mass confusion about the various amounts alleged by the Defendants has resulted. For example, where the Notice of Deposit of Surplus Funds indicates that the balance owed on the loan at the time of the sale was $169,566.16, Form 1099-B says it was $152,332.91, and where Plaintiff was due a payment of $154,289.69 as surplus from the sale of the Property, Form 1099-C indicates that Fannie Mae was canceling his debt in the amount of $152,332.91.

30.     In addition to the stress related to losing his homestead, Plaintiff suffered a sense of heightened confusion and intense worries associated with the impact of the IRS Tax Forms as transmitted by the Defendants, as well as the potential that the indebtedness has not been satisfied exposing him to personal liability even though his home had been lost to foreclosure. Plaintiff was not certain whether he should include Form 1099-C with his 2018 tax return information as instructed by the Forms. As he was unable to figure out on his own, Plaintiff had to retain an attorney, Jeff Jared, Esq., to assist him in making sense of the tax implication generated by the Defendants' transmission of the 1099 Forms to him.

31.     On behalf of Plaintiff, Jeff Jared reached out to defendant Cenlar and was put in touch with Cenlar's Assistant General Counsel Kevin G. McDonald. Only after the involvement of counsel, on December 29, 2020, Mr. McDonald sent Mr. Jared an email that reads:

> Please accept this correspondence as confirmation of my voicemail left on 12/24/2020. **As I indicated in the voicemail, upon review, the 1099-C was issued in error and will be revised immediately**. I have asked to be provided confirmation as soon as the revision is issued and will confirm the same with you.

(**Exhibit K, McDonald Email**).

32.     Despite the verbal and written assurances by Cenlar's counsel, the Defendants

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

neither revised nor withdrew the IRS 1099-C or 1099-A and B. As a result of the Defendants' transmission of the documents, Plaintiff has lost time and money, including attorney fees and costs, trying to determine the tax implication as well as the potential for continued personal liability under the note and continues to incur these losses in his ongoing effort to resolve the conflicting information the Defendants provided him through the identified documents, e the conflicting information provided by the Defendants.

33.    Plaintiff has experienced physical symptoms from the anxiety, stress, and confusion caused by the Defendants' fraudulent information in foreclosure sale related documents and the IRS 1099 Forms.  He is living in fear that if he in fact owed any taxes based on the Defendants' reporting to the IRS, the taxes have not been paid and will result in severe interests and penalties over time, but he is paralyzed by the contradictions and uncertainties created by the Defendants. Plaintiff feels despondent and helpless. He is angry and outraged and saddened by the callous treatment and attitude that the Defendants have. Plaintiff finds it difficult to move on with his life. He is irritable by the slightest things in his daily life and he feels anxious all the times. Plaintiff's physical symptoms, manifested from such mental distress include headaches, stomachaches, loss of sleep and appetite.

### III. CAUSES OF ACTION
### VIOLATION OF THE RACKETEER INFLUENCED & CORRUPT ORGANIZATIONS ACT

34.    Plaintiff realleges the factual allegations in the foregoing paragraphs and incorporates them by reference as though set forth fully herein.

35.    The Racketeer Influenced & Corrupt Organizations Statute (RICO), creates a civil cause of action for any person injured in his business or property by reason of a violation of 18 U.S.C §1962.  To state a RICO claim under §1962, there must be: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise. And when these three elements are met, the court then continues to the substantive requirements of each section of §1962.

COMPLAINT                                                10

36.    A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued activity. Predicate acts asserted as a basis for a pattern of racketeering activity may include RICO mail and wire fraud. 18 U.S.C. § 1961(1)(B). RICO mail and wire fraud require evidence of intent to defraud, i.e., evidence of a scheme to defraud by false or fraudulent representations.

37.    In this case, Defendant Alan Burton is a "RICO person" as defined by the statute because he is the Vice President of his company, defendant Trustee Corps; Trustee Corps is a "RICO enterprise." Furthermore, there exists an association in-fact which comprises of Burton, Trustee Corps, Cenlar, Lakeview, and Fannie Mae because these co-conspirators colluded and participated in various arrangements to securitize and service mortgage loans, to foreclose on real property serving as collateral of these mortgage loans and conduct post-sale activities affecting consumers like Plaintiff using fraudulent representations.

38.    In this case, Burton and Trustee Corps carried out the foreclosure of Plaintiff's Property through numerous predicate acts of mail fraud. Burton and Trustee Corps used the mail to transmit foreclosure documents including but not limited to Notice of Default and Notice of Trustee's Sale to Plaintiff and others, whereupon these documents never once mentioned the role of Fannie Mae as a Lender, a Creditor, Owner or Holder of the Note, or the Beneficiary under the Deed of Trust signed by the Plaintiff. Without these documents and the specific representations within, the Defendants would not have been able to repossess the Property through nonjudicial means.  Through the mail, the Defendants have been able to convey false information and fraudulently induce others to act or refrain from acting based on upon such false information.

39.    Burton and Trustee Corps received the sale proceeds from Byron Krech in the amount of $325,000 and retained certain amount from such proceeds as compensation for their work. The amount retained by Burton and Trustee Corps would have been used wholly or in

11

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

part to invest back into the Enterprise.

40.    Upon information and belief, Burton and Trustee Corps were responsible for the accounting and transmission of the sale proceeds via wire to the rightful owner of the loan. Yet, Cenlar and Lakeview are not the rightful owner of the loan, as Fannie Mae has been identified as the Lender/Creditor in the IRS Forms 1099 that were mailed to the Plaintiff. It would appear that Fannie Mae was not the recipient of the wire because the IRS Forms indicate that the loan was cancelled, rather than paid off.

41.    The Defendants Cenlar, Lakeview and Fannie Mae caused for the IRS 1099 Forms to be mailed to Plaintiff via USPS mail. The information represented within these forms directly contradicted the information within the Notice of Deposit of Surplus Funds from Trustee's Sale filed under case number 18202444-1, in the Superior Court of Spokane County. The information represented in the Trustee's Deed and the Notice of Deposit of Surplus Funds directly conflict with the information represented within the IRS Forms and such conflict proves that the information represented in the IRS Forms are patently false. The defendants have committed mail fraud as a predicate act of RICO by transmitting false or fraudulent representations through interstate mail in connection with their overall scheme involving nonjudicial foreclosure, foreclosure sale and post-sale activities.

42.    Cenlar and Lakeview were responsible for the information within the IRS Forms to be consistent with the information about the auction sale conducted by Burton and Trustee Corps. Fannie Mae, being the Creditor/Lender of the loan, would have been made fully aware of the facts concerning the sale as well as the representations contained within the IRS Forms. By allowing for its name to be associated with the tax Forms, Fannie Mae tacitly approved the other Defendants' conduct taken on its behalf and in its name. Defendants Burton, Trustee Corps, Cenlar, Lakeview and Fannie Mae, as co-conspirators, were all aware of the essential nature and scope of the Foreclosure Enterprise and participated in its endeavors fully. In other words, having possessed all information concerning the balance of the loan, the

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

expenses of foreclosure, and the surplus due the Plaintiff, these co-conspirators nevertheless made false representations in the 1099 Forms, including the representation that the indebtedness in the amount of $152,332.90 was cancelled and Plaintiff was personally liable for the repayment of the same.

43.     Fannie Mae took part in the conspiracy because it knew of the essential nature and scope of the Foreclosure Enterprise including the preparation and transmission of the IRS Forms 1099 post sale, and adopted such action taken by those co-conspirators, allowing for its name to be represented in Form 1099-C as the "Creditor" and "Lender" of the loan.  Fannie Mae was furthering and facilitating the conspiracy involving the predicate acts of mail fraud and wiring fraud by allowing for the information in Form 1099-C to be mailed to the Plaintiff and to be reported to the IRS, impacting Plaintiff's tax liability, when it knew or should have known that the information contained within are patently false.

44.     Only after Plaintiff retained counsel who requested clarification of the information represented by the IRS 1099 Forms, Defendant Cenlar, through its counsel, has admitted the Forms were issued in error, and should be withdrawn. However, no corrections or withdrawal have ever taken place. Cenlar, being the Attorney in Fact of Lakeview, and representative of Fannie Mae, has failed to take immediate remedial action following its admission of fault; liability raising from Cenlar's failure extends to Lakeview and Fannie Mae.

45.     Plaintiff has been injured by Burton and Trustee Corps' failure to account for the sale proceeds and the application of the same to satisfy the balance owed on the loan. The information reported by Burton and Trustee Corps instead resulted in the inaccurate reporting to the IRS through Forms 1099, whereupon Plaintiff is exposed to tax liability based on debt cancelation when the debt was in fact never cancelled but was paid in full. In addition to the tax liability, and personal liability arising from the canceled debt, Plaintiff has suffered loss of time and resources, including attorney fees expended on his effort to remedy the situation caused by the Defendants. Plaintiff has suffered and continued to suffer emotional distress and

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

physical manifestation of such emotional distress; Plaintiff's injuries were proximately caused by the claimed RICO violations.

## FRAUDULENT REPRESENTATION

46.    Plaintiff realleges the factual allegations in the foregoing paragraphs and incorporates them by reference as though set forth fully herein.

47.    The Defendants engaged in Fraudulent Representation, which requires proof by clear, cogent, and convincing evidence of nine elements of fraud: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the other party; (6) the other party's ignorance of its falsity; (7) the other party's reliance on the truth of the representation; (8) the other party's right to rely upon it; and (9) damages suffered by the other party. Here, the Defendants are in the business of securitizing and servicing mortgage loans and foreclosing on the collaterals secured the loans. Their representations about the foreclosure sale of Plaintiff's home, particularly the disposition of the sale proceeds, are material to the Defendants' business and impacts Plaintiff's financial and taxation status directly and significantly. The Defendants have always been in possession of the information concerning the disposition of the foreclosure sale proceeds as they were the entities that declared the default, conducted the sale, and accounted for the sale proceeds. The Defendants knew the information represented in the 1099 Forms were false and knew that Plaintiff as the recipient of such information would have to rely upon the information and to take certain actions as a taxpayer. As the Debtor/Recipient/Borrower identified in these forms, Plaintiff has a right to rely on the information represented within these forms, and damages have resulted from the Defendants' Fraudulent Representation.

48.    Plaintiff has been injured by the Defendants' Fraudulent Representation. Plaintiff is exposed to tax liability as well as personal liability based on the reported debt cancelation even though the debt was paid in full. In addition to liabilities associated with the reported debt cancelation, Plaintiff has suffered loss of time and resources, including attorney

COMPLAINT

14

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

fees and costs expended on his effort to remedy the errors committed by the Defendants as well as emotional distress from Defendants' Fraudulent Representation.

49.     Only after Plaintiff retained counsel who requested clarification of the information represented by the IRS 1099 Forms, Defendant Cenlar, through its counsel, has admitted the Forms were issued in error, and should be withdrawn. However, no corrections or withdrawal have ever taken place. The Defendant's failure to take immediate remedial action following its admission of fault is brazen and egregious; it has proximately caused Plaintiff emotional distress and physical manifestation from such emotional distress.

## NEGLIGENT MISREPRESENTATION

50.     Plaintiff realleges the factual allegations in the foregoing paragraphs and incorporates them by reference as though set forth fully herein.

51.     Plaintiff alleges the alternative theory that Defendants are liable to him under Negligent Misrepresentation.  The elements of negligent misrepresentation differ from affirmative misrepresentation and a party must prove these six elements by clear, cogent, and convincing evidence: (1) the party supplied information for the guidance of others in their business transactions that was false, (2) the party knew or should have known that the information was supplied to guide the other party in his business transactions, (3) the party was negligent in obtaining or communicating the false information, (4) the other party relied on the false information, (5) the other party's reliance was reasonable, and (6) the false information proximately caused the other party damages.

52.     The Defendants in case are in the business of securitizing and servicing mortgage loans, and foreclosure of real property used as collateral of these mortgage loans. They are in the business of providing guidance of consumers such as the Plaintiff in these particular business transactions. The Defendants knew of their roles and all have supplied Plaintiff with information concerning who is the Creditor or Lender of his loan, how much he still owed on the loan in 2018, how much the Property was sold for, and how the sale proceeds

of the Property were applied.  Even though Plaintiff's Property was sold and the proceeds from the sale were more than sufficient to pay the loan in its entirety, Defendants mailed Plaintiff IRS Forms 1099 representing just the opposite. According to the tax forms, Plaintiff remained personally liable in the amount of $152,332.91, exposing Plaintiff to liability to the IRS as well as personal liability under the Note. Plaintiff had no choice but to rely upon the information represented by Defendants' IRS1099 Forms, and where the information represented by these Forms are patently false, such falsity has proximately caused Plaintiff damages.

53.     Only after Plaintiff went through the expense of retaining counsel who requested clarification of the information represented by the IRS 1099 Forms, did Defendant Cenlar respond, admitting that Form 1099-C was issued in error, and should be withdrawn. However, despite this admission and promise, no correction or withdrawal has ever taken place. The Defendant's failure to take immediate remedial action following its admission of fault is outrageous and brazen given the serious nature and the scope of injury they have inflicted upon the Plaintiff.

54.     Plaintiff has been injured by the Defendants' Negligent Misrepresentation. Plaintiff is exposed to tax liability based on debt cancelation Defendants reported to the IRS as well as personal liability from the note because the debt was reported to the IRS as having been canceled. In addition to the tax liability, interest and penalties, and personal liability, Plaintiff has suffered loss of time and resources, including attorney fees and costs expended in his ongoing effort to rectify the situation. Plaintiff has suffered and continues to suffer emotional distress and physical manifestation from such emotional distress as a result of Defendants' Negligent Misrepresentation.

## VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT

55.     Plaintiff realleges the factual allegations in the foregoing paragraphs and

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

incorporates them by reference as though set forth fully herein.

56.    RCW 19.86.090, the Washington Consumer Protection Act, allows anyone who has been injured in his property by a violation of the statute to bring a civil action in which he may recover actual damages, trial costs, and attorney fees. The trial court may, in its discretion, award treble damages. Under the CPA, Plaintiff has to prove five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation.

57.    All of the Defendants have held themselves out to be experts in the field of mortgage lending, servicing, and foreclosure, and conduct their businesses from within and outside of the State of Washington. They rely on the mail, the phone, and the internet for their advertisement, day to day operations, and to receive compensation and send payments from proceeds of collateral sales. In so doing, the Defendants have engaged in trade or commerce. The Defendants' business involving mortgage lending, loan servicing, and nonjudicial foreclosure have been adjudicated by Washington courts as impacting an important business interest. Yet, their conduct, including the preparation and transmission of documents containing representations about who is the Creditor or Lender of the Plaintiff's loan, the amount owed on the loan, the successful bid at foreclosure sale, and the application of the sale toward the loan, have directly caused Plaintiff's damages because the information furnished are false or directly in conflict.

58.    Only after Plaintiff was compelled to retain counsel, he finally received a response from Defendant. Yet, despite admitting that Form 1099-C was issued in error and promising to correct, Cenlar has done nothing. Said failure to take immediate remedial action following its admission of fault is brazen and egregious given how profoundly Plaintiff has been impacted by the Defendants' wrongdoing.

59.    Plaintiff has been injured by the Defendants' Negligent Misrepresentation.

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

Plaintiff is exposed to tax liability based on debt cancelation Defendants reported to the IRS and personal liability under the Note as Defendants created uncertainties about who actually owns the loan. In addition to the tax liability and personal liability, Plaintiff has suffered loss of time and resources, including attorney fees and costs expended in his effort to remedy the situation. Plaintiff has suffered and continues to suffer emotional distress and physical manifestation from such emotional distress as a result of Defendants' violation of the Consumer Protection Act.

### DEFENDANTS COMMITTED PER SE VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT

60.     Plaintiff realleges the factual allegations in the foregoing paragraphs and incorporates them by reference as though set forth fully herein.

61.     To recover for a *per se* violation of the Consumer Protection Act, Plaintiff must prove: (1) the existence of a pertinent statute; (2) its violation; (3) such violation was the proximate cause of damages sustained; and (4) he was within the class of people the statute sought to protect. Once Plaintiff establishes a *per se* violation of the CPA, he needs to only demonstrate that the violation proximately caused injury to his property.

62.     Plaintiff alleges that the Defendants violated RICO.  Congress supplemented the criminal penalties of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. §1961 et seq., with the extraordinary civil provision for treble damages in furtherance of its concern in protecting the public from the evils of racketeer-influenced enterprises. Plaintiff is part of the "public" the statute sought to protect.  Plaintiff has been victimized by the Defendants acting in concert as a RICO person, a RICO enterprise, as well as an association in-fact; they conducted the foreclosure sale of Plaintiff's homestead but failed to account for the proceeds properly and accurately to the entity entitled to such recovery. Additionally, the Defendants prepared and conveyed IRS Forms 1099 that contain fraudulent

COMPLAINT                                          18

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

representation or negligent misrepresentations that the debt was not paid off, but canceled, exposing Plaintiff to tax liability, interests and penalties associated therefrom, and personal liability. The issuance of IRS Forms 1099 came about as a result of the work done by Defendants Burton, Trustee Corps, Cenlar, Lakeview relating to the default and foreclosure sale, and Defendant Fannie Mae's participation as the Creditor/Lender of the loan.

63.     Only after Plaintiff was compelled to retain counsel, he finally received a response from Defendant. Yet, despite admitting that Form 1099-C was issued in error and promising to correct, Cenlar has done nothing. Said failure to take immediate remedial action following its admission of fault is brazen and egregious given how profoundly Plaintiff has been impacted by the Defendants' wrongdoing.

64.     As a result of the Defendants' violations of RICO, they have committed a *per se* violation of the CPA. Such *per se* violation of the CPA caused Plaintiff actual injuries including exposure to tax liability and personal liability, loss of time and resources, including attorney fees and costs expended in his effort to obtain accurate information about the sale of his home. Plaintiff has suffered and continues to suffer from emotional distress and physical manifestation from such emotional distress as a result of Defendants' *per se* violation of the Consumer Protection Act.

**TORT OF OUTRAGE**

65.     Plaintiff realleges the factual allegations in the foregoing paragraphs and incorporates them by reference as though set forth fully herein.

66.     The elements of the tort of outrage are: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of plaintiff." These elements are present in this case.

67.     In *Lucero v. Cenlar FSB,* 2016 U.S. Dist. LEXIS 10430 (W.D. Wash. Jan. 28, 2016), Judge Robert Lasnik considered evidence submitted at trial and concluded that plaintiff-

COMPLAINT                                                        19

borrower "has raised a reasonable inference and the Court finds that Cenlar, annoyed that plaintiff had sued it after obtaining a loan modification and looking for leverage to force her to abandon this litigation, adopted a strained and unprincipled analysis of the Deed of Trust to justify the imposition of unpredictable and enormous charges directly onto plaintiff's mortgage statements as 'Amounts Due'" *Id.* at *23. Such conduct, according to the court, constitutes the tort of outrage:

> Cenlar, having reviewed plaintiff's financial situation less than a year before and being fully aware that plaintiff was paying late charges every month, had no reason to believe that she could cope with these charges. **Cenlar reasonably should have known (and was likely counting on the fact) that these charges would cause immense emotional distress, which they did. Cenlar compounded the distress by denying plaintiff information about these charges or the justification therefore**. The first notice of the charges stated that they were charged "in keeping with Washington law." This assertion is wholly unsupported: Cenlar's witness acknowledges that the letter was a form into which the reference to "Washington law" was inserted simply because the loan originated in Washington. No Washington case law, statute, or regulation has been identified that authorize the charges levied against plaintiff's mortgage account. When plaintiff requested information regarding the charges, she was ignored for months. Eventually various contract provisions were identified, and Cenlar asserted that it was simply keeping track of charges it might eventually seek to recover from plaintiff. Regardless of whether Cenlar was demanding immediate payment or was simply threatening to collect them in the future, the message was clear: continue this litigation and we will take your home. Such conduct is beyond the bounds of decency and is utterly intolerable.

*Lucero*, at *24, emphasis added.

68.     Here, the Defendants succeeded in taking Plaintiff's home from him and would be annoyed of the fact that he sued them to bring their conduct in the foreclosure sale into focus. However, unlike Lucero, the Defendants are no longer in a lending or servicing relationship between Plaintiff and the Defendants, and he is no longer under the threat of foreclosure. Therefore, the only impact their conduct would have on him is through post-sale activities. While the Defendants' transmission of the IRS 1099 Forms advising the IRS that the Defendants had

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

canceled the debt in the amount of $152,332.91 and that Plaintiff was personally liable for such amount, when the debt was paid in full, was an egregious act, their refusal to clean up after their "mistake" makes their conduct outrageous and intolerable in a civilized society. The Defendants' acts were deliberate as they knew the worries and fear typically associated with a tax liability where you have to answer the IRS would be sure to materialize. Despite the confrontation by the Plaintiff's attorney, the Defendants have refused to clean up after themselves. Thus, the emotional distress caused by the IRS 1099 Forms  and their refusal to rectify the situation were entirely foreseeable by the Defendants.

69.    The Defendants knew that Plaintiff had no means at his disposal to challenge the IRS 1099 Forms on his own. Even after Plaintiff expended resources to hire an attorney to obtain clarifications from the Defendants, he fared no better. Even though Cenlar's counsel indicated that the Forms were issued in error and promised that immediate remedial action would be taken, no such remedial action was ever taken. Cenlar's deliberate refusal to reverse the course of its action goes beyond the bounds of decency and is utterly intolerable.

70.    As a result of the Defendants' outrageous conduct, Plaintiff has suffered severe emotional distress. He is living in fear that if he in fact owed any taxes based on the Defendants' reporting to the IRS, the taxes have not been paid and will result in severe interests and penalties over time. Plaintiff also worries about the debt not being satisfied and exposing him to further personal liability. Plaintiff feels despondent and helpless. He is angry because even though he has the assistance of an attorney, the Defendants have refused to do anything about the problems they have created. Plaintiff is humiliated by the callous treatment and attitude that the Defendants have. Plaintiff finds it difficult to move on with his life. He is depressed and is irritable by the slightest things in his daily life. There is a general sense of anxiety that resides in his life. Plaintiff's physical symptoms, manifested from such mental distress include headaches, stomachaches, loss of sleep and appetite.

## CIVIL CONSPIRACY

71.    Plaintiff realleges the factual allegations in the foregoing paragraphs and

COMPLAINT                                    21

incorporates them by reference as though set forth fully herein.

72.    An action for civil conspiracy lies when there is an agreement by two or more persons to accomplish some purpose, not in itself unlawful, by unlawful means. Proof is sufficient if it shows concert of action or other facts and circumstances from which the natural inference arises that the unlawful overt act was committed in furtherance of a common design, intention, and purpose of the alleged conspirators. In other words, circumstantial evidence is competent to prove conspiracy.

73.    In this case, Defendants Burton, Trustee Corps, Lakeview and Cenlar combined their effort to cause the loss of Plaintiff's home through nonjudicial foreclosure, and Defendant Fannie Mae placed its name on post-sale tax reporting documents to implicate Plaintiff in certain tax liability and personal liability.  Although the foreclosure itself is sanctioned under Washington law, the Defendants used documents containing false representation about the ownership of the loan, the amount of debt owed by the Plaintiff, and the applications of the sale proceeds. Not one defendant named in this action could effectuate the trustee's sale through the transmission of default and foreclosure documents or issue the IRS Forms 1099 post-sale alone; they had to depend on one another to reach the objectives of divesting the Plaintiff of his Property and exposing him to tax liability and personal liability by declaring the loan was not paid off but cancelled.

74.    The gist of a civil conspiracy is not the unlawful agreement, but the damage resulting from that agreement or its execution. The cause of action is not created by the conspiracy but by the wrongful acts done by the Defendants to the injury of the Plaintiff. In this case, the overt acts Defendants engaged including the issuance via the mail of foreclosure documents that were opaque and misleading with regards to the ownership of, and the amount owed on the loan, the filing of Notice of Deposit of  Surplus Funds in a court of law that directly contradict post-sale tax forms sent to Plaintiff via mail, and the common design is to divest Plaintiff of ownership of the Property and to create tax and personal liabilities where none exists.

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

75.     The Defendants are liable to the Plaintiff jointly and severally; each is liable for all acts committed by any of the other co-conspirators, either before or after their entrance, in furtherance of the common design. As a result of the Defendants' commission of civil conspiracy, Plaintiff has suffered severe emotional distress. He is living in fear that if he in fact owed any taxes based on the Defendants' reporting to the IRS, the taxes have not been paid and will result in severe interests and penalties over time. Plaintiff also worries about the debt not being satisfied and exposing him to further personal liability. Plaintiff feels despondent and helpless. He is angry because even though he has the assistance of an attorney, the Defendants have refused to do anything about the problems they have created. Plaintiff is humiliated by the callous treatment and attitude that the Defendants have. Plaintiff finds it difficult to move on with his life. He is depressed and is irritable by the slightest things in his daily life. There is a general sense of anxiety that resides in his life. Plaintiff's physical symptoms, manifested from such mental distress include headaches, stomachaches, loss of sleep and appetite.

## IV. PRAYER FOR RELIEF

WHEREFORE, having fully set forth facts and legal authorities in support of his claims for relief under the federal RICO, the Washington Consumer Protect Act, Fraudulent Representation, Negligent Misrepresentation, Civil Conspiracy and the tort of Outrage, against Defendants Cenlar, FSB; Lakeview Servicing LLC, Federal National Mortgage Association, MTC Financial, Inc., d/b/a Trustee Corps, and Alan Burton, Plaintiff prays the Court for the following relief:

a) Declaratory judgment that Defendants' conduct violated RICO and the CPA;

b) Award actual and statutory damages, including treble damages as allowed under RICO;

c) Award actual and statutory damages, including treble damages as allowed under the CPA;

COMPLAINT                                           23                   **GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

d) Damages for mental anguish and emotional distress under the tort theories, including the tort of Outrage;

e) Pecuniary damages including actual taxes owed, interests and penalties imposed by the IRS, and other damages under the torts of Fraudulent Representation and Negligent Misrepresentation.

f) Costs and reasonable attorney fees allowed under RICO and the WACPA;

g) For such other and further relief as the Court may deem just and proper.

DATED:  April 13, 2021.

GRAND CENTRAL LAW, PLLC


*/s/ Ha Thu Dao*
Ha Thu Dao, WSBA 21793
Counsel for Plaintiff
10728 16th Ave SW
Seattle, WA 98146
727-269-9334
hadaojd@gmail.com

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com