IN THE UNITED DISTRICT COURTS
IN THE EASTERN DISTRICT OF WASHINGTON
SPOKANE DIVISION

ANDREY GERMANOVICH, an individual,

Plaintiff,

v.

CENLAR, FSB; LAKEVIEW LOAN
SERVICING, LLC;  and FEDERAL
NATIONAL MORTGAGE ASSOCIATION,

 Defendants.

CASE: 2-21-cv-00141-SAB
FIRST AMENDED COMPLAINT
[JURY DEMAND]

## FIRST AMENDED COMPLAINT

Plaintiff ANDREY GERMANOVICH, by and through the undersigned counsel, hereby files his First Amended Complaint asserting claims against CENLAR, FSB; LAKEVIEW SERVICING LLC, and FEDERAL NATIONAL MORTGAGE ASSOCIATION. The purpose of the amendment is to drop certain defendants and claims. Plaintiff alleges the following:

## I. INTRODUCTION & IDENTIFICATION OF PARTIES

1.     This case is about the Defendants' fraudulent practices within their specialized business of lending, securitizing, owning, servicing, and collecting debt on mortgages secured by real property.  The Defendants' businesses are interconnected and involving not only the

FIRST AMENDED COMPLAINT

1

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

lending of funds through securitization, servicing of mortgage loans, debt collection, but in facilitating foreclosure of real property used as collateral of these mortgage loans. Each defendant's operation makes up a necessary part of the overall vertical integration known as mortgage lending. For example, defendant Federal National Mortgage Association's expertise is the purchase of mortgage loans through securitization, whereas Cenlar FSB, and Lakeview Servicing LLC, serve as the servicing arm of this government sponsored entity, and in the performance of loan servicing, hiring companies and individuals including Alan Burton, and his company, MTC Financial d/b/a Trustee Corps, to foreclose real property which serve as collateral for those loans that have defauled. There exists an interdependence for these Defendants to complete their mutual objectives in securitizing, servicing, and recovery of the investment through foreclosure of the collateral.

2.      Plaintiff Andrey Germanovich, hereinafter "Germanovich" is a resident of Spokane, Washington. He purchased his primary residence located at 4710 South Pender Lane, Spokane, Washington ("the Property"), and borrowed $180,000, in July of 2005, from Indymac Bank, F.S.B. The loan was secured by the Property.

3.      Defendant Cenlar F.S.B. ("Cenlar"), based out of New Jersey, is a federally chartered savings banks which provides mortgage loan servicing and subservicing. It served as the loan servicer on behalf of Defendant Federal National Mortgage Association ("Fannie Mae"). Cenlar purportedly acts as attorney in-fact for Defendant Lakeview Servicing LLC, the servicer of Plaintiff's loan.  Cenlar was directly involved in the nonjudicial foreclosure of the Property through its referral of Plaintiff's Property for nonjudicial foreclosure to third-party Trustee Corps, and furnishing documents that facilitated the nonjudicial foreclosure sale conducted by Trustee Corps and others.

4.      Defendant Lakeview Servicing, LLC ("Lakeview"), operating out of Coral Gables, Florida, is the fourth largest mortgage loan servicer in the nation. Lakeview partnered with defendant Cenlar, in the servicing of the Germanovich loan and the foreclosure of the

Germanovich Property.

5.      MTC Financial, Inc., d/b/a Trustee Corps ("Trustee Corps"), a non-defendant, is a Washington corporation specializes in nonjudicial foreclosures of real property. Trustee Corps acts as the foreclosing agent of Defendants Cenlar and Lakeview and handled the trustee's sale of the Germanovich Property in 2018.

6.      Defendant Federal National Mortgage Association ("Fannie Mae") is a Government Sponsored Entity headquartered in Washington D.C. Fannie Mae chartered by Congress to stimulate home ownership and provide liquidity to the mortgage market. Fannie Mae does not originate or loan money directly but buys and guarantees mortgage loans in the secondary market. In this case, in post-sale documents, Fannie Mae was identified by Cenlar, Lakeview, Trustee Corps to be the Lender/Creditor of the loan that Plaintiff obtained in 2005 even though Fannie Mae is not identified in any loan documents or foreclosure documents, including the promissory Note, Deed of Trust, Notice of Default, Assignment of Deed of Trust, Appointment of Successor Trustee, or Notice of Trustee's Sale.

## II. JURISDICTION AND VENUE

7.      The Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. §1332 as they are citizens of different states and the amount of controversy claimed by Plaintiff exceeds $75,000.

8.      Venue is properly in the Eastern District of Washington, Spokane because the Plaintiff resides here, and because the alleged acts and omissions occurred in this District.

## III. FACTUAL ALLEGATIONS

9.      In 2005, Plaintiff borrowed $180,000 from Indymac Bank and the loan was secured by the Property, which he used as his primary residence. Plaintiff was never informed that Indymac was seized by the FDIC or that his loan might have been securitized. He was relegated to deal with various loan servicers including OneWest, Ocwen, and Lakeview. In October of 2017, Trustee Corps transmitted a Notice of Default to Plaintiff, declaring the loan

FIRST AMENDED COMPLAINT                    3                    **GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

to be default and scheduling a trustee's sale. In the Notice, Trustee Corps identified the beneficial owner of the Deed of Trust to be "Lakeview Loan Servicing, LLC by Cenlar FSB as Attorney in Fact" (**Exhibit A**). Accompanying the Notice of Default is a Foreclosure Loss Mitigation Form on Cenlar's letterhead (**Exhibit B**). Nowhere in these foreclosure documents was Fannie Mae ever disclosed as an entity having ownership over the loan.

10.     Trustee Corps signed and caused for the Notice of Trustee's Sale, dated November 21, 2017, to be recorded in the Public Records of Spokane County, Washington, setting the auction sale for April 6, 2018. The Notice of Trustee's Sale identified Lakeview Loan Servicing LLC as the "Current Beneficiary" with the business address of Cenlar (**Exhibit C**). Neither the Notice of Default nor the Notice of Trustee's Sale list the balance owed on the loan for purpose of the auction sale.

11.     Before the foreclosure sale, Plaintiff contacted one of the servicers, Ocwen Loan Servicing, LLC, and received written explanations as to the origin of his Loan as follows:

> Ocwen's records indicate the loan was originated with Indymac Bank, F.S.B., A Federal Chartered Savings Bank on 07/05/2005 for $180,000.00. . .
>
> **As a result of the 2012 Chapter 11 Residential Capital, LLC bankruptcy filing, a portion of the servicing platform and certain related assets of GMAC Mortgage, LLC (GMACM) were sold to Ocwen effective February 16, 2013**. As part of that sale, Ocwen acquired the servicing and records for this account. Ocwen's response is based on the available account records acquired from GMACM, as well as account records maintained by Ocwen.
>
> Following the acquisition of certain assets of GMACM by Ocwen, former-GMAC loans underwent a system conversion, in order to be maintained on the same servicing system as Ocwen loan. For this loan, the conversion occurred on 03/01/2014 with the loan due for 03/01/14 payment.

(**Exhibit L**, Letter from Ocwen dated 02/26/2018)

12.     Because of Plaintiff's inability to ascertain which entity he was supposed to deal with, Plaintiff ended losing his home to the nonjudicial foreclosure organized by the Defendants. In 2020, Plaintiff commenced a civil suit in the Superior Court of Spokane County against Trustee Corps and its vice president, Alan Burton, Cenlar and Lakeview as defendants based on

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

1    their conduct within the nonjudicial foreclosure sale and seeking redress under the Washington

2    Deed of Trust Act. Defendants Cenlar and Lakeview were later dismissed from the lawsuit but

3    Trustee Corps and Alan Burton, and other defendant remain in the state court litigation under

4    case number 20-2-01090-32, where Plaintiff hopes to ferret out the truth about his mortgage

     Loan and the sale of his Property.

5        13.    In 2018, Trustee Corps sold the Property to one Byron Kreck for $325,000; it

6    issued a Trustee Certificate of Sale/Receipt listing five separate checks received from Kreck

7    totaling $325,000 (**Exhibit D**).

8        14.    On April 11, 2018, Trustee Corps issued and caused to be recorded the Trustee's

9    Deed Upon Sale. The Trustee's Deed again identifying "Lakeview Loan Servicing, LLC by

10   Cenlar FSB as Attorney in Fact, *being then the holder of the indebtedness secured by said Deed*

     *of Trust*" and declaring that the sum of $325,000 constituted "the satisfaction in full of the

11   obligation then secured by said Deed of Trust, together with fees, costs, and expenses as provided

12   by statute." (**Exhibit E**), emphasis added. [1]

13       15.    On May 30, 2018, a Notice of Deposit of Surplus Funds from Trustee's Sale

14   Pursuant to RCW 61.24.080, was filed under case number 18202444-1, in the Superior Court of

15   Spokane County, on behalf of Trustee Corps. This document cites to the auction sale date, the

16   Trustee's Deed, as well as the following disclosure:

17       At the time of sale, the obligation secured by the Deed of Trust amounted to
         $169,566.16. The cost of filing this deposit is $240.00. The attorney fees are
18       $800 and expenses are $104.16 for mailing. **The surplus deposited herewith
         is $154,289.68**

19
20   (**Exhibit G**). Other than the information represented within the Notice of Deposit of

     Surplus Funds, the Defendants did not disclose the opening bid, how it was computed,

21   or the entity to whom the sale proceeds were remitted.

22       16.    According to this Notice of Deposit of Surplus Funds, the proceeds of

23   _____

24   [1] Alan Burton later recorded a Corrective Trustee's Deed (**Exhibit F**), to correct the Notice of Trustee's Sale
     recording date and auditor number. All other aspects of the original Trustee's Deed remain unchanged.

     FIRST AMENDED COMPLAINT                          5                    **GRAND CENTRAL LAW PLLC**
                                                                          10728-16th Ave SW
                                                                          Seattle, WA 98146
                                                                          727.269.9334
                                                                          hadaojd@gmail.com

1    the foreclosure sale ($325,000) were more than enough to pay the balance owed
2    ($169,566.16) in full, as well as the costs associated with foreclosure sale ($1,144.16).
3    Based on the Defendants' Notice of Deposit, Plaintiff was due a refund in the amount
     of $154,289.69.

4        17.    Subsequently, in 2019, Plaintiff received, via USPS mail, an IRS Form 1099-C
5    entitled "Cancellation of Debt" where he is listed as the "Debtor." This document identifies, for
6    the very first time, defendant Fannie Mae as the "Creditor" with the address of 3900 Wisconsin
7    Avenue N.W., Washington D.C 20016."

8        18.    Form 1099-C has seven (7) boxes. In Box 1, the "Date of identifiable event" is
9    April 16, 2018. In Box 2, the "Amount of Debt Discharged" is listed as $152,332.91. In Box 6,
10   the "Identifiable Event Code" is specified as "D" and in In Box 4, the "Debt description" is the
11   address for the Property. In Box 7, the "Fair market value of property" is specified as "0.00"
     (**Exhibit H, Form 1099-C**). Plaintiff learned that the buyer, Byron Krech, resold the Property
12   shortly after buying it at auction, for $524,900, an indicator of the Property's Fair Market Value.

13       19.    Form 1099-C also contains "Instructions to Debtor" which explains that Code D
14   is for "foreclosure election" and " . . . [g]enerally, the gross foreclosure bid is considered to the
15   FMV [fair market value]." The 1099-C also carries this warning:

16       This is important tax information and is being furnished to the IRS. *If you are*
17       *required to file a return, a negligence penalty or other sanctions may be*
         *imposed on you if taxable income results from this transaction and the IRS*
         *determines that it has not been reported.*
18
     (**Exhibit H**). The gross foreclosure bid, according to the Trustee's Deed is $325,000, which is
19   not accurately reported in Form 1099-C.

20       20.    The Defendants also sent Plaintiff IRS Form 1099-A via USPS mail, entitled
21   "Acquisition or Abandonment of Secured Property."  There are five (5) boxes on Form 1099-A.
     In Box 1, the date of April 6, 2018, appears, which is the auction sale date. In Box 2, the "Balance
22   of principal outstanding" is shown as $152,332.91, and in Box 4, the "Fair market value" is
23   stated as $325,000. In Box 5, the box is checked to show that "the borrower was personally liable
24

FIRST AMENDED COMPLAINT                          6                **GRAND CENTRAL LAW PLLC**
                                                                  10728-16th Ave SW
                                                                  Seattle, WA 98146
                                                                  727.269.9334
                                                                  hadaojd@gmail.com

for repayment of the [sic]" (**Exhibit I, Form 1099-A**).

21.     The Defendants sent Plaintiff IRS Form 1099-B, "Mortgage Interest Statement" via USPS mail. However, in this Form, the Recipient/Lender is now identified as Cenlar Loan Administration and Reporting, with its address in Ewing, New Jersey. The "outstanding mortgage principal as of 1/1/2018" is listed as $152,332.91. Form 1099-C also informs $168.45 of "Late Charges Paid" and "Payment Applied" in the amount of $152,332.90.  Furthermore, while Plaintiff did not make any payment in the year of 2018, Form 1099-B indicates the amount of $168.45 was "Mortgage interest received from payer(s)/borrower(s)." (**Exhibit J, Form 1099-B**). The Balance Principal Outstanding stated in Forms 1099 of $152,332.90 directly contradict the balance of the loan as reported by the Notice of Deposit of Surplus Funds in the amount of $169,566.16.

22.     The law requiring 1099-C filings is codified in the Internal Revenue Code, stating:

> (a) In general. Any applicable entity which discharges (in whole or in part) the indebtedness of any person during any calendar year shall make a return (at such time and in such form as the Secretary [of the Treasury] may by regulations prescribe) setting forth-
> (1) the name, address, and [Taxpayer Identification Number] of each person whose indebtedness was discharged during such calendar year,
> (2) the date of the discharge and the amount of the indebtedness discharged, and
> (3) such other information as the Secretary may prescribe.

23.     Defendants issued Forms 1099-C and 1099-A to Plaintiff, whereupon Defendant Fannie Mae is identified as Creditor and Lender. This makes Fannie Mae an "applicable entity" as defined in I.R.C §6050P(c )(1) of the Code, and Plaintiff is a "person" under §7701(a)(1). The Regulation defines an "identifiable event" as a "discharge of indebtedness pursuant to an agreement between an applicable entity and a debtor to discharge indebtedness at less than full consideration." 26 C.F.R. §1.6050P-1(b)(2)(i)(F). Section D of 26 C.F.R. §1.6050P-1 provides for the cancellation or extinguishment of an indebtedness pursuant to an election of foreclosure remedies by a creditor that statutorily extinguishes or bars the creditor's right to pursue collection

of the indebtedness[;]".

24.    IRS publications pertaining to 1099-C forms provide that financial institutions must file a 1099-C form pertaining to debt cancellation events. A debt cancellation event includes: "A cancellation or extinguishment when the creditor elects foreclosure remedies that by law end or bar the creditor's right to collect the debt. This event applies to a mortgage lender or holder who is barred by local law from pursuing debt collection after a 'power of sale' in the mortgage or deed of trust is exercised." In this case, the Defendants' IRS 1099 Forms fraudulently reported a debt cancellation event and an amount of indebtedness being "cancelled" when the debt was paid in full, and the Plaintiff was due a surplus. Additionally, the amount of the debt cancellation as reported by the Defendants cannot be reconciled with information the Defendants reported elsewhere, including the Notice of Deposit of Surplus Funds that they filed in Spokane County Superior Court.

25.    IRS Form 1099-C further conflicts with other foreclosure documents issued by the Defendants in which the Beneficiary of the Deed of Trust and Note Owner/Holder is identified as defendant "Lakeview Loan Servicing, LLC, by Cenlar, FSB, as Attorney in Fact." For example, the Trustee's Deed issued by Trustee Corps declares that Lakeview was the "then holder of the Indebtedness secured by said Deed of trust, delivered to said Trustee a written request directing said Trustee or his authorized agent to sell the described property in accordance with law and terms of said Deed of Trust." (**Exhibit F**).

26.    The IRS 1099 Forms issued by the Defendants contain fraudulent information as they identify a Lender/Creditor which is foreign to the transaction and has never appeared in any of the title-related or foreclosure-related documents recorded in the public record of Spokane County where the Property is located. The Forms represent a loss sustained by the Creditor/Lender when there was none. The documents also raise the question of whether the proceeds from the foreclosure sale were properly remitted to the rightful owner of the Loan in satisfaction of the balance owed.

FIRST AMENDED COMPLAINT

8

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

27.     Upon receipt of the 1099 Forms, Plaintiff became extremely distressed as he understood that the  information reported by the Defendants could expose him to a tax liability in the amount of $152,332.91 because such amount was "cancelled" by the "Creditor" identified a Fannie Mae. Plaintiff has been fraught with anxiety as he has never been able to confirm the entity that actually owns the loan and whether the sale proceeds of his Property were paid to this entity, ending his personal liability once and for all. Plaintiff tried unsuccessfully to figure out on his own how the Defendants came up with the figure of $152,332.91, when the Defendants' Notice of Deposit of Surplus Funds from Trustee's Sale says the Loan was paid in full.

28.     Because Plaintiff had not received any mortgage statements from Lakeview or Cenlar for nearly a year, because the Defendants never provided him with the breakdown of the principal owed, accrued interest, and all foreclosure related fees and costs, and because Fannie Mae, with whom Plaintiff never had any dealing, was finally disclosed as the Creditor/Lender of the loan, mass confusion about the various amounts alleged by the Defendants has resulted. For example, where the Notice of Deposit of Surplus Funds indicates that the balance owed on the loan at the time of the sale was $169,566.16, Form 1099-B says it was $152,332.91, and where Plaintiff was due a payment of $154,289.69 as surplus from the sale of the Property, Form 1099-C indicates that Fannie Mae was canceling his debt in the amount of $152,332.91.

29.     In addition to the stress related to losing his homestead, Plaintiff suffered a sense of heightened confusion and intense worries associated with the impact of the IRS Tax Forms as transmitted by the Defendants, as well as the potential that the indebtedness has not been satisfied exposing him to personal liability even though his home had been lost to foreclosure. Plaintiff was not certain whether he should include Form 1099-C with his 2018 tax return information as instructed by the Forms. As he was unable to figure out on his own, Plaintiff had to retain an attorney, Jeff Jared, Esq., to assist him in making sense of the tax implication generated by the Defendants' transmission of the 1099 Forms to him.

30.     On behalf of Plaintiff, Jeff Jared, Esq., conducted an investigation into the path

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

that the Loan had traveled but was not able to confirm any of the representations made by the Defendants relating to their issuance of the 1099 tax forms as accurate. Counsel's investigation yielded more questions than answers when he compared the documents issued by the Defendants against the disclosure made by Ocwen Loan Servicing, LLC, that Plaintiff's Loan was part of a group of GMACM's assets (**Exhibit L**).

31.    Counsel's investigation revealed that Ocwen assigned the Deed of Trust that Plaintiff signed in 2005 to Mortgage Electronic Registration, Inc. or MERS, who then assigned the Deed of Trust to Defendant Lakeview Servicing LLC. What is peculiar about the Loan is that in order for MERS to assign the Deed of Trust to Defendant Lakeview, MERS must have been a note holder. Yet, it was established throughout the case law of foreclosure that MERS' role in mortgages and deeds of trust is that of a nominee, and never a note holder. This irregularity, coupled with Ocwen's disclosure that Plaintiff's Loan was a part of a group of GMACM's assets, and the fact that there is no evidence of any involvement by Defendant Fannie Mae at any time, heightened Plaintiff's suspicion that the foreclosure was based on faulty documentation. The Defendants' issuance of the 1099 tax forms also worsened Plaintiff's fear that although his house was sold, the proceeds of the sale might not have been given to the rightful owner of the Loan/Debt and that it is possible he could be subjected to collection again for the same debt that was extinguished by nonjudicial foreclosure in 2018.

32.    Finally, in December of 2020, plaintiff's counsel was put in touch with Cenlar's Assistant General Counsel Kevin G. McDonald. Only after the involvement of counsel, on December 29, 2020, Mr. McDonald sent Mr. Jared an email that reads:

> Please accept this correspondence as confirmation of my voicemail left on 12/24/2020. **As I indicated in the voicemail, upon review, the 1099-C was issued in error and will be revised immediately**. I have asked to be provided confirmation as soon as the revision is issued and will confirm the same with you.

(**Exhibit K, McDonald Email**).

33.    Despite the verbal and written assurances by Mr. McDonald as Cenlar's counsel, the Defendants neither revised nor withdrew the IRS 1099-C or 1099-A and B on an "immediate

FIRST AMENDED COMPLAINT                    10

basis" as promised.

34.     As a result of the Defendants' transmission of the documents, Plaintiff has lost time and money—time that he could use to earn an income. Plaintiff has incurred attorney fees and costs trying to determine the tax implication as well as the potential for continued personal liability under the note; he continues to incur these losses in his ongoing effort to resolve the conflicting information the Defendants provided him through the identified documents. Plaintiff's loss of time and resources are continuing.

35.     Separately, Plaintiff has been incurring attorney fees and costs. To date, Plaintiff has incurred in excess of $30,000 in attorney fees in his effort to confirm the proceeds of the sale of his property were paid to the rightful owner of the Loan. Plaintiff continues to incur attorney fees, and loss of time and resources as a result of the Defendants' wrongdoings.

36.     Plaintiff has experienced physical symptoms from the anxiety, stress, and confusion caused by the Defendants' fraudulent information in foreclosure sale related documents and the IRS 1099 Forms.  He is living in fear that if he in fact owed any taxes based on the Defendants' reporting to the IRS, the taxes have not been paid and will result in severe interests and penalties over time, but he is paralyzed by the contradictions and uncertainties created by the Defendants. Plaintiff feels despondent and helpless. He is angry, outraged and saddened by the callous treatment and attitude that the Defendants have exhibited toward him. Plaintiff finds it difficult to move on with his life. He is irritated by the slightest things in his daily living and he feels anxious all the times. Plaintiff's physical symptoms, manifested from such mental distress include headaches, stomachaches, loss of sleep and appetite. Although it is difficult to quantify his emotional distress damages, he has been experiencing such distress since April of 2018 on a daily basis.

37.     After Plaintiff had hired another attorney to file the original Complaint, the Defendants, through their attorney, Jason E. Manning, Esq., transmitted a "Corrected 1099-C" for the 2018 tax year, entitled "Cancellation of Debt." Page 2 of the Corrected 1099-C informs

GRAND CENTRAL LAW PLLC
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

Plaintiff: "You receive this form because a Federal Government agency or an applicable financial entity (a creditor) has discharged (canceled or forgiven) a debt you owed, or because an identifiable event has occurred that either is or is deemed to be a discharge of a debt of $600 or more." Although the "Amount of debt discharged" is "0.00," no 1099-C should have been issued when no cancellation of debt ever occurred. Therefore, the receipt of the "Corrected Form 1099-C" has not operated to stop or reduce the damages experienced by the Plaintiff.

38.     The Corrected 1099-C as issued by the Defendants identifies Fannie Mae as the "Creditor." Yet, Plaintiff had never borrowed any monies from Fannie Mae. Plaintiff had no dealings with Fannie Mae, directly or indirectly, relating to the mortgage loan that he borrowed from Indymac Bank in 2005. He never received any correspondence from Fannie Mae and none of the Defendants named herein had ever confirmed for him that Fannie Mae is the creditor from whom he borrowed money.

39.     The Corrected 1099-C as issued by the Defendants bears an address for Plaintiff as "4710 S Pender Lane, Spokane WA 99224-8429" even though the Defendants knew that Plaintiff had been evicted from this location, which served as his home for many years, as a result of the nonjudicial foreclosure they initiated.

### III. CAUSES OF ACTION

### FRAUDULENT REPRESENTATION

40.     Plaintiff realleges the factual allegations in the foregoing paragraphs and incorporates them by reference as though set forth fully herein.

41.     The Defendants engaged in Fraudulent Representation, which requires proof by clear, cogent, and convincing evidence of nine elements of fraud: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the other party; (6) the other party's ignorance of its falsity; (7) the other party's reliance on the truth of the representation; (8) the other party's right to rely upon it; and (9) damages suffered by the other party. Here, the Defendants are in the

FIRST AMENDED COMPLAINT

12

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

business of securitizing and servicing mortgage loans and foreclosing on the collaterals secured the loans. Their representations about the foreclosure sale of Plaintiff's home, particularly the disposition of the sale proceeds, are material to the Defendants' business and impacts Plaintiff's financial and taxation status directly and significantly.

42.     The Defendants have always been in possession of the information concerning who owned the Loan and who held the Note at the time of the nonjudicial foreclosure sale. Defendants held themselves out to be the entities with the legal rights to declare default, direct for the nonjudicial foreclosure sale to be commenced, and to account for the sale proceeds. Defendants were responsible for accurate accountings of the sale proceeds and to apply them toward the debt as to free Plaintiff from any liability. Yet, Defendants chose to make representations that are false or directly conflict with information provided to Plaintiff by other third parties. Plaintiff had no means to discover the nature and full extent of the Defendants' deception because Defendants worked in concert with each other to hide the truth from borrowers like the Plaintiff.

43.     The Defendants knew the information represented in the 1099 Forms were false on the day they were issued in 2018. The Defendants knew further that Plaintiff as the recipient of such forms would have to rely upon the information to take certain actions, including whether to submit the forms to the IRS along with his tax return. As the Debtor/Recipient/Borrower identified in these forms, Plaintiff has a right to rely on the information represented within these forms; he reasonably relied on the information represented within the 1099 Forms as issued by the Defendants and have suffered damages as a result of the Defendants' Fraudulent Representation.

44.     Plaintiff has been injured by the Defendants' Fraudulent Representation. Plaintiff is potentially exposed to tax liability as well as personal liability based on the reported debt cancelation and the inconsistencies on how the debt was transferred from one entity to another, and how the Deed of Trust was assigned several times. In addition to liabilities

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

associated with the reported debt cancelation, Plaintiff has suffered loss of time and resources, including attorney fees and costs expended on his effort to remedy the errors committed by the Defendants as well as emotional distress caused by Defendants' Fraudulent Representation.

45.    Only after Plaintiff retained counsel who requested clarification of the information represented by the IRS 1099 Forms, Defendant Cenlar, through its counsel, admitted the Forms were issued in error, and should be withdrawn "immediately." However, no corrections or withdrawal have ever taken place as promised. The Defendant's failure to take immediate remedial action following its admission of fault is brazen and egregious; it has proximately caused Plaintiff emotional distress and physical manifestation from such emotional distress.

46.    Plaintiff was compelled to engage counsel to sue the Defendants for the withdrawal of the 1099 Tax Forms they issued. Despite Defendants' belated transmission of a copy of the Corrected Form 1099-C via electronic mail, they have not disclosed the specific information they reported to the Internal Revenue Service about the debt. Plaintiff remains in doubt about the impact of the Defendants' action on his taxation.

## NEGLIGENT MISREPRESENTATION

47.    Plaintiff realleges the factual allegations in the foregoing paragraphs and incorporates them by reference as though set forth fully herein.

48.    Plaintiff alleges that Defendants are liable to him under Negligent Misrepresentation.  The elements of negligent misrepresentation differ from affirmative misrepresentation and a party must prove these six elements by clear, cogent, and convincing evidence: (1) the party supplied information for the guidance of others in their business transactions that was false, (2) the party knew or should have known that the information was supplied to guide the other party in his business transactions, (3) the party was negligent in obtaining or communicating the false information, (4) the other party relied on the false information, (5) the other party's reliance was reasonable, and (6) the false information

FIRST AMENDED COMPLAINT                             14

proximately caused the other party damages.

49.    The Defendants in case are in the business of securitizing and servicing mortgage loans, and foreclosure of real property used as collateral of these mortgage loans. They are in the business of providing guidance of consumers such as the Plaintiff in these particular business transactions. The Defendants knew of their respective roles in servicing the Loan and foreclosing on the Property as collateral, and all have supplied Plaintiff with information concerning who is the Creditor or Lender of his Loan, how much the Property was sold for, and how the sale proceeds of the Property were applied, which turned out to be false. Even though Plaintiff's Property was sold and the proceeds from the sale were more than sufficient to pay the loan in its entirety, Defendants mailed Plaintiff IRS Forms 1099 representing just the opposite. According to the tax forms, Plaintiff remained personally liable in the amount of $152,332.91, exposing Plaintiff to liability to the IRS as well as personal liability under the Note. Plaintiff had no choice but to rely upon the information represented by Defendants' IRS1099 Forms, and where the information represented by these Forms are patently false, such falsity has proximately caused Plaintiff damages.

50.    Only after Plaintiff went through the expense of retaining counsel who investigated the circumstances underlying the Defendants' issuance of the IRS 1099 forms did Defendant Cenlar respond, admitting that Form 1099-C was issued in error, and should be withdrawn. However, despite this admission and promise, no correction or withdrawal took place. Cenlar's failure to take immediate remedial action as promised, following its admission of fault, constitutes yet another misrepresentation. Cenlar's conduct is outrageous and brazen given the serious nature and the scope of injury the Defendants have inflicted upon Plaintiff.

51.    Plaintiff has been injured by the Defendants' Negligent Misrepresentation. Plaintiff might be exposed to tax liability based on debt cancelation Defendants reported to the IRS because the debt was reported to the IRS as having been canceled. Given the conflicting and/or inaccurate information Plaintiff received from the Defendants and other third-parties, it

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

is entirely possible that he continues to be liable for the debt, even though his Property was foreclosed upon. In addition to the tax liability, interest and penalties flowing from such liability, and personal liability, Plaintiff has also suffered loss of time and resources, including attorney fees and costs expended in his ongoing effort to rectify the situation.

52.     Plaintiff has suffered and continues to suffer emotional distress and physical manifestation from such emotional distress as a result of Defendants' Negligent Misrepresentation.

## VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT

53.     Plaintiff realleges the factual allegations in the foregoing paragraphs and incorporates them by reference as though set forth fully herein.

54.     RCW 19.86.090, the Washington Consumer Protection Act, allows anyone who has been injured in his property by a violation of the statute to bring a civil action in which he may recover actual damages, trial costs, and attorney fees. The trial court may, in its discretion, award treble damages. Under the CPA, Plaintiff has to prove five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation.

55.     All of the Defendants have held themselves out to be experts in the field of mortgage lending, servicing, and foreclosure, and conduct their businesses from within and outside of the State of Washington. They rely on the mail, the phone, and the internet for their advertisement, day to day operations, and to receive compensation and send payments from proceeds of collateral sales. In so doing, the Defendants have engaged in trade or commerce. The Defendants' business involving mortgage lending, loan servicing, and nonjudicial foreclosure have been adjudicated by Washington courts as impacting an important business

FIRST AMENDED COMPLAINT                              16                    **GRAND CENTRAL LAW PLLC**
                                                                          10728-16th Ave SW
                                                                          Seattle, WA 98146
                                                                          727.269.9334
                                                                          hadaojd@gmail.com

interest. Yet, their conduct, including the preparation and transmission of documents containing representations about who is the Creditor or Lender of the Plaintiff's Loan, the amount owed on the loan, the successful bid at foreclosure sale, and the application of the sale proceeds toward the Loan, have been less than truthful and the untruthfulness directly caused Plaintiff's damages.

56.    Only after Plaintiff was compelled to retain counsel, he finally received a response from Defendant. Yet, despite admitting that Form 1099-C was issued in error and promising to correct, Cenlar did not do so in December of 2020. Said failure to take immediate remedial action following its admission of fault is brazen and egregious given how profoundly Plaintiff has been impacted by the Defendants' wrongdoing.

57.    Plaintiff has been injured by the Defendants' Negligent Misrepresentation. Plaintiff is exposed to tax liability based on the debt cancelation Defendants reported to the IRS and personal liability under the Note as Defendants created uncertainties about who actually owned the loan at the time of the foreclosure sale. In addition to the tax liability and personal liability, Plaintiff has suffered loss of time and resources, including attorney fees and costs expended in his effort to remedy the situation.

## TORT OF OUTRAGE

58.    Plaintiff realleges the factual allegations in the foregoing paragraphs and incorporates them by reference as though set forth fully herein.

59.    The elements of the tort of outrage are: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of plaintiff." These elements are present in this case.

60.    In *Lucero v. Cenlar FSB,* 2016 U.S. Dist. LEXIS 10430 (W.D. Wash. Jan. 28, 2016), Judge Robert Lasnik considered evidence submitted at trial and concluded that plaintiff-borrower "has raised a reasonable inference and the Court finds that Cenlar, annoyed that

17    **GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

plaintiff had sued it after obtaining a loan modification and looking for leverage to force her to abandon this litigation, adopted a strained and unprincipled analysis of the Deed of Trust to justify the imposition of unpredictable and enormous charges directly onto plaintiff's mortgage statements as 'Amounts Due'" *Id.* at *23. Such conduct, according to the court, constituted the tort of outrage.  The court awarded Lucero emotional distress damages in the amount of $500 per day:

> Cenlar, having reviewed plaintiff's financial situation less than a year before and being fully aware that plaintiff was paying late charges every month, had no reason to believe that she could cope with these charges. **Cenlar reasonably should have known (and was likely counting on the fact) that these charges would cause immense emotional distress, which they did. Cenlar compounded the distress by denying plaintiff information about these charges or the justification therefore**. The first notice of the charges stated that they were charged "in keeping with Washington law." This assertion is wholly unsupported: Cenlar's witness acknowledges that the letter was a form into which the reference to "Washington law" was inserted simply because the loan originated in Washington. No Washington case law, statute, or regulation has been identified that authorize the charges levied against plaintiff's mortgage account. When plaintiff requested information regarding the charges, she was ignored for months. Eventually various contract provisions were identified, and Cenlar asserted that it was simply keeping track of charges it might eventually seek to recover from plaintiff. Regardless of whether Cenlar was demanding immediate payment or was simply threatening to collect them in the future, the message was clear: continue this litigation and we will take your home. Such conduct is beyond the bounds of decency and is utterly intolerable.

*Lucero*, at *24, emphasis added.

61.    Here, the Defendants succeeded in taking Plaintiff's home from him and acted annoyed of the fact that he sued them to bring their conduct in the foreclosure sale into focus. However, unlike Lucero, the Defendants are no longer in a lending or servicing relationship between Plaintiff and the Defendants, and he is no longer under the threat of foreclosure. Therefore, the only impact their conduct would have on him is through post-sale activities. While the Defendants' transmission of the IRS 1099 Forms advising the IRS that the Defendants had

canceled the debt in the amount of $152,332.91 and that Plaintiff was personally liable for such amount, when the debt was paid in full, was an egregious act, their refusal to clean up after their admitted "mistake" makes their conduct outrageous and intolerable in a civilized society.

62.     The Defendants' acts were deliberate as they knew the worries and fear typically associated with a tax liability would be sure to materialize whether the liability has been assessed or not by the IRS. Despite the confrontation by the Plaintiff's attorney, the Defendants refused to clean up after themselves. Thus, the emotional distress caused by the IRS 1099 Forms and their refusal to rectify the situation were entirely foreseeable by the Defendants.

63.     The Defendants knew that Plaintiff had no means at his disposal to challenge the IRS 1099 Forms on his own. Even after Plaintiff expended resources to hire an attorney to obtain clarifications from the Defendants, he fared no better. Even though Cenlar's counsel indicated that the Forms were issued in error and promised that immediate remedial action would be taken, no such remedial action was ever taken. Cenlar's deliberate refusal to reverse the course of its action goes beyond the bounds of decency and is utterly intolerable.

64.     As a result of the Defendants' outrageous conduct, Plaintiff has suffered severe emotional distress. He is living in fear that if he in fact owed any taxes based on the Defendants' reporting to the IRS, the taxes have not been paid and will result in severe interests and penalties over time. Plaintiff also worries about the debt not being satisfied and exposing him to further personal liability. Plaintiff feels despondent and helpless. He is angry because even though he has the assistance of an attorney, the Defendants have refused to do anything about the problems they have created. Plaintiff is humiliated by the callous treatment and attitude that the Defendants have toward him. Plaintiff finds it difficult to move on with his life. He is depressed and is irritable by the slightest things in his daily living. There is a general sense of anxiety that resides in his life. Plaintiff's physical symptoms, manifested from such mental distress include headaches, stomachaches, loss of sleep and appetite.

## CIVIL CONSPIRACY

65.     Plaintiff realleges the factual allegations in the foregoing paragraphs and

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

incorporates them by reference as though set forth fully herein.

66.     An action for civil conspiracy lies when there is an agreement by two or more persons to accomplish some purpose, not in itself unlawful, by unlawful means. Proof is sufficient if it shows concert of action or other facts and circumstances from which the natural inference arises that the unlawful overt act was committed in furtherance of a common design, intention, and purpose of the alleged conspirators. In other words, circumstantial evidence is competent to prove conspiracy.

67.     In this case, Defendants Lakeview and Cenlar combined their effort to cause the loss of Plaintiff's home through nonjudicial foreclosure, and Defendant Fannie Mae placed its name on post-sale tax reporting documents to implicate Plaintiff in certain tax liability and personal liability.  In conducting the nonjudicial foreclosure, the Defendants used documents containing false representations or representations that directly conflict with information Plaintiff received from other third-parties about the ownership of the loan, the amount of debt owed by the Plaintiff, and the application of the sale proceeds toward the debt. Defendant Lakeview declared that defendant Cenlar was acting as its agent and attorney in-fact, and Defendant Fannie Mae, by placing its name on the original 1099 Tax Forms, allowed Lakeview and Cenlar to undertake the actions that resulted in the sale of Plaintiff's Property and the issuance of these erroneous 1099 IRS Forms.  These entities relied on each other to reach the objectives of divesting the Plaintiff of his Property and exposing him to tax liability and personal liability by declaring the Loan was not paid off but cancelled instead.

68.     The gist of a civil conspiracy is not that the agreement was unlawful per se , but the damage resulting from that agreement or its execution. The cause of action is not created by the conspiracy but by the wrongful acts done by the Defendants that results in the injury of the Plaintiff. In this case, the overt acts Defendants engaged including the issuance via the mail of foreclosure documents that were opaque and misleading with regards to the ownership of, and the amount owed on the loan, the filing of Notice of Deposit of  Surplus Funds in a court of law

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

that directly contradict post-sale tax forms sent to Plaintiff via mail, and the Defendants' refusal to take corrective actions as part of their common design to divest Plaintiff of ownership of the Property and to create tax and personal liabilities where none exists.

69.    The Defendants are liable to the Plaintiff jointly and severally; each is liable for all acts committed by any of the other co-conspirators, either before or after their entrance, in furtherance of the common design. As a result of the Defendants' commission of civil conspiracy, Plaintiff has suffered severe emotional distress. He is living in fear that if he in fact owed any taxes based on the Defendants' reporting to the IRS, the taxes have not been paid and will result in severe interests and penalties over time. Plaintiff also worries about the debt not being satisfied and exposing him to further personal liability. Plaintiff feels despondent and helpless. Plaintiff is humiliated by the callous treatment and attitude that the Defendants have toward him. Plaintiff finds it difficult to move on with his life. He is depressed and is irritable by the slightest things in his daily living. There is a general sense of anxiety that resides in his life. Plaintiff's physical symptoms, manifested from such mental distress include headaches, stomachaches, loss of sleep and appetite.

## IV. PRAYER FOR RELIEF

WHEREFORE, having fully set forth facts and legal authorities in support of his claims for relief under the Washington Consumer Protect Act, Fraudulent Representation, Negligent Misrepresentation, Civil Conspiracy and the tort of Outrage, against Defendants Cenlar, FSB; Lakeview Servicing LLC, Federal National Mortgage Association, Plaintiff prays the Court for the following relief:

a) Declaratory judgment that Defendants' conduct violated Washington Consumer Protection Act;

b) Award actual and statutory damages, including treble damages as allowed under the Washington Consumer Protection Act;

FIRST AMENDED COMPLAINT                    21

**GRAND CENTRAL LAW PLLC**
10728-16th Ave SW
Seattle, WA 98146
727.269.9334
hadaojd@gmail.com

1    c) Damages for mental anguish and emotional distress under the tort theories, including the

2    tort of Outrage;

3    d) Pecuniary damages including actual taxes owed, interests and penalties imposed by the

4    IRS, and other damages under the torts of Fraudulent Representation, Negligent

5    Misrepresentation, and Civil Conspiracy;

6    e) Costs and reasonable attorney fees allowed under the Washington Consumer Protection

7    Act;

8    f) For such other and further relief as the Court may deem just and proper.

9

10    DATED:  July 1, 2021.

11                                                     GRAND CENTRAL LAW, PLLC

12

13                                                     */s/ Ha Thu Dao*
                                                       Ha Thu Dao, WSBA 21793
14                                                     Counsel for Plaintiff
                                                       10728 16th Ave SW
15                                                     Seattle, WA 98146
                                                       727-269-9334
16                                                     hadaojd@gmail.com

                        **CERTIFICATE OF SERVICE**
17

18    I certify that I have caused to be served in the manner noted below a copy of the

      foregoing pleading on the following individual(s):
19

20    Román D. Hernández
      Jason Manning
21    Troutman Pepper
      100 SW Main St., Ste 1000
22    Portland, OR 97204
      Email: roman.hernandez@troutman.com;
23    aimee.davis@troutman.com;
      jason.manning@troutmansanders.com

24

FIRST AMENDED COMPLAINT                        22            **GRAND CENTRAL LAW PLLC**

[ ] Via Facsimile
[ ] Via First Class Mail
[ ] Via Messenger
[X] Via CM/ECF Electronic Notice
[ ] Via E-Mail


Michael DeLeo
Peterson Russell Kelly Livengood PLLC
10900 NE 4th Street, Ste 1850
Bellevue, WA 98004
(425) 462-4700
Mdeleo@prklaw.com

[ ] Via Facsimile
[ ] Via First Class Mail
[ ] Via Messenger
[X] Via CM/ECF Electronic Notice
[ ] Via E-Mail

DATED: July 1st, 2021




                                        /s/ Ha Thu Dao
                                        Ha Thu Dao, Esq.