1

Román D. Hernández, WSBA #39939
Troutman Pepper

2

100 SW Main St., Ste 1000
Portland, OR 97204

3

Tel.: (503) 290-2400
Fax: (503) 290-2405

4

Email: roman.hernandez@troutman.com

5

6

Jason E. Manning, *Admitted Pro Hac Vice*
Troutman Pepper

7

222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7564

8

Fax: (757) 687-7510
Email:  jason.manning@troutman.com

9

10

11

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

12

SPOKANE DIVISION

13

**ANDREY GERMANOVICH,** an individual,

14

Plaintiff,

15

v.

16

**CENLAR, FSB; LAKEVIEW LOAN
SERVICING, LLC; FEDERAL
NATIONAL MORTGAGE
ASSOCIATION,**

17

18

Defendants.

19

20

21

22

Case No. 2:21-cv-00141-SAB

**DEFENDANTS CENLAR FSB,
LAKEVIEW LOAN SERVICING, LLC,
AND FEDERAL NATIONAL
MORTGAGE ASSOCIATION'S
MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS**

September 3, 2021

Without Oral Argument

23

24

25

26

27

28

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR  97204

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................. 1

II.     STATEMENT OF FACTS ..................................................................................... 2

III.    LEGAL STANDARD ............................................................................................ 3

IV.     ARGUMENT ......................................................................................................... 4

      A.      Plaintiff Fails to State a Claim Because His Claims are Barred by the
Doctrines on *Res Judicata* and Collateral Estoppel ................................. 4

          i. Plaintiff's Claims are Barred by *Res Judicata* .................................. 4

          ii. Plaintiff's Claims are Barred by Collateral Estoppel........................ 7

      B.      Plaintiff's Fraudulent Representation Claim Alleges Facts Contradicting
any Fraudulent Intent. ........................................................................... 10

      C.      Plaintiff's Washington Consumer Protection Act Claim Fails. ........................... 11

      D.      Plaintiff's Tort of Outrage Claim Fails. ................................................. 13

      E.      Plaintiff's Civil Conspiracy Claim Fails. ............................................... 15

V.      CONCLUSION .................................................................................................... 17

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR 97204

DEFENDANTS CENLAR FSB, LAKEVIEW LOAN SERVICING, LLC, AND FEDERAL NATIONAL MORTGAGE
ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants Cenlar FSB ("Cenlar"), Lakeview Loan Servicing, LLC ("Lakeview"), and Federal National Mortgage Association ("Fannie Mae," collectively "Defendants"), by and through undersigned counsel, move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Amended Complaint (ECF No. 18) filed by Plaintiff Andrey Germanovich ("Plaintiff").

## I.    **INTRODUCTION**

Plaintiff had a mortgage secured on property that was sold at foreclosure in April 2018. Plaintiff's entire Complaint is premised upon a 2018 IRS 1099-C Form that Cenlar issued to the IRS in error and that Cenlar has since corrected.[1]  Under the IRS code and established law, a 1099-C Form is informational only, it does not "cause" anything.  Tellingly, Plaintiff has failed to allege that he was assessed any tax liability for the initial 1099-C, let alone that he actually paid any taxes as a result of it.  Plaintiff has neither alleged nor incurred any recoverable damages.

On the contrary, Plaintiff admits that he defaulted on his loan obligations and received a significant surplus disbursement (over $150,000.00) from the foreclosure sale of the property. The 2018 IRS 1099-A Form that Cenlar issued to Plaintiff correctly evidences that surplus disbursement. Similarly, the foreclosure documents are accurate and consistent with the 1099 Forms because, at foreclosure, Lakeview was the beneficiary, Cenlar the servicer, and Fannie Mae the investor.  Again, the "discrepancies" Plaintiff alleges are legally deficient, having no causation, no damages, and rendered moot by the corrected 1099-C.

Moreover, the state court dismissed Cenlar and Lakeview with prejudice from a prior state court action arising from the same foreclosure documents and the same 1099-C form at issue in Plaintiff's Amended Complaint here. Therefore, the doctrines of *res judicata* and collateral estoppel bar Plaintiff from relitigating the same claims and issues that were brought and resolved in state court.  Each of the five counts in Plaintiff's Amended Complaint suffer from this common defect and dismissal is warranted.  Further, as discussed below, Plaintiff also fails to plead factual allegations sufficient to state a claim for additional reasons, having relied solely on legal conclusions in a shotgun-style pleading.  Amendment is futile.

---

[1] A true and accurate copy of the Corrected 1099-C is attached hereto as **Exhibit A**.  A copy of the Correct 1099-C was provided to Plaintiff's counsel on May 7, 2021.

Troutman Pepper Hamilton Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR  97204

II.    **STATEMENT OF FACTS**

In July 2005, Plaintiff alleges he borrowed $180,000 from Indymac Bank, F.S.B., and the loan was secured by the property located at 4710 South Pender Lane, Spokane, Washington 99224 ("Property"). *See* Amended Complaint ("Am. Compl."), ECF No. 18 at ¶ 2, 9.

On October 12, 2017, Plaintiff received a Notice of Default ("Notice of Default") from Trustee Corp (co-defendant), (ECF No. 18-1), and a Foreclosure Loss Mitigation Form ("Foreclosure Loss Mitigation Form"), (ECF No. 18-2), on Cenlar's letterhead. Am. Compl. ¶ 9. A recorded Notice of Trustee's Sale ("Notice of Trustee's Sale"), dated November 21, 2017, set the Property auction sale for April 6, 2018. ECF No. 18-3. Plaintiff alleges he was confused as to the origin of his Loan and received a letter from Ocwen dated February 26, 2018 regarding the origin of his Loan. ECF No. 18-12.

The Trustee's Certificate of Sale/Receipt ("Certificate of Sale/Receipt") indicates that the Property was subsequently sold on April 6, 2018 to Byron Kreck for $325,000.00 (ECF No. 18-4), and the Trustee's Deed Upon Sale ("Deed Upon Sale") was signed on April 11, 2018 and recorded on April 17, 2018. ECF No. 18-5. A Corrective Trustee's Deed, amending the recording date and auditor number, was subsequently recorded in June 2018. ECF No. 18-6.

On May 30, 2018, a Notice of Deposit of Surplus Funds from the Trustee's Sale was filed in Superior Court of Spokane County evidencing a surplus of $154,289.68 from the Trustee's Sale after accounting for Plaintiff's obligation secured by the Deed of Trust ($169,566.16), the filing fee ($240.00), the attorney fees ($800.00) and mailing expenses ($104.16). ECF No. 18-67. The informational tax forms 2018 IRS 1099-A (ECF No. 18-9), 1099-B (ECF No. 18-10), and 1099-C (ECF No. 18-8) were subsequently filed with the IRS and issued to Plaintiff.

Plaintiff retained an attorney and Plaintiff's attorney was allegedly unable to confirm the representations in the 1099 forms in light of the letter received from Ocwen Loan Servicing, LLC (ECF No. 18-12) and the "irregularity" of a Deed of Trust assignment from MERS to Lakeview. Am. Compl. ¶¶ 30–31.

Plaintiff's attorney contacted Cenlar's Assistant General Counsel, Kevin G. McDonald regarding alleged errors with Plaintiff's 1099 forms – namely, alleged inconsistencies between

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR 97204

- 2 -

DEFENDANTS CENLAR FSB, LAKEVIEW LOAN SERVICING, LLC, AND FEDERAL NATIONAL MORTGAGE
ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

the foreclosure documents and the 1099 forms. *Id.* at ¶ 32. In response, Mr. McDonald sent the following email: "Please accept this correspondence as confirmation of my voicemail left on 12/24/2020. As indicated in the voicemail, upon review, the 1099-C was issued in error and will be revised immediately. I have asked to be provided confirmation as soon as the revision is issued and will confirm the same with you." *Id. &* ECF No. 18-11. A corrected 1099-C was subsequently issued to the IRS and a courtesy copy was provided to Plaintiff's former attorney, Ms. Ha Thu Dao, on May 7, 2021. Am. Compl. ¶¶ 37–39.

Plaintiff filed suit in the Superior Court of Spokane County against Alan Burton, Trustee Corps, Cenlar, and Lakeview "based on their conduct within the nonjudicial foreclosure sale and seeking redress under the Washington Deed of Trust Act," but that Cenlar and Lakeview were dismissed with prejudice. *See id.* at ¶ 12. Therefore, Plaintiff's claims arising from or relating to the foreclosure are barred as to Cenlar and Lakeview. Plaintiff subsequently filed his Complaint (ECF No. 1) on April 13, 2021. Plaintiff filed his Amended Complaint for on July 1, 2021, and the Court granted Plaintiff's counsel's Motion to Withdraw on July 12, 2021 (ECF No. 20).

### III.    LEGAL STANDARD

To survive a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere labels and legal conclusions stating that the plaintiff is entitled to relief are not enough. *Id*. at 555. "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Twombly*, 550 U.S. at 556–57).

This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly,* 550 U.S. at 570). It requires that the facts "plausibly give rise to an entitlement to relief," assuming the veracity of the "well pleaded factual allegations." *Id.* at 996 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Thus, the "[f]actual allegations must be enough to raise a right to relief above the

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR 97204

- 3 -

DEFENDANTS CENLAR FSB, LAKEVIEW LOAN SERVICING, LLC, AND FEDERAL NATIONAL MORTGAGE
ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

1    speculative level," *Twombly*, 550 U.S. at 545, to one that is "plausible on its face," *id*. at 570,

2    rather than merely "conceivable." *Id*. The Court must accept as true all well-pleaded factual

3    allegations, but not so for legal conclusions. "Threadbare recitals of the elements of a cause of

4    action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV.    ARGUMENT

### A.    Plaintiff Fails to State a Claim Because His Claims are Barred by the Doctrines on *Res Judicata* and Collateral Estoppel

"Federal courts are compelled by the 'full faith and credit statute to give collateral estoppel and res judicata effects to the judgment of state courts." *Southeast Resource Recovery Facility Authority v. Montenay Int'l Corp.*, 973 F.2d 711, 712–13 (9th Cir. 1992). Because Plaintiffs' claims and/or issues raised in this action are precluded by the State Court Order dismissing Cenlar and Lakeview from the State Court Action[2] with prejudice[3]—the doctrines of *res judicata* and collateral estoppel apply. *See Elliot Bay Adjustment Co. v. Dacumos*, 401 P.3d 473, 477 (Wash. Ct. App. 2017) ("A dismissal with prejudice constitutes a final judgment on the merits.") (citations omitted). Collateral estoppel "prevents relitigation of issues in a subsequent claim or cause of action" whereas *res judicata* "prevents a second assertion of the same claim or cause of action." *Weaver v. City of Everett*, 412 P.3d 1013, 1018 (Wash Ct. App. 2018) (citing *Seattle-First Nat'l Bank v. Kawachi*, 91 Wn.2d 223, 225–26, 588 P.2d 725 (1978)).

#### *i. Plaintiff's Claims are Barred by Res Judicata*

"In a diversity action, state law rules of claim preclusion apply to an earlier state court judgment." *Allen v. Campbell,* No. 4:20-cv-00218-DCN, 2021 U.S. Dist. LEXIS 36597, at *11 (D. Idaho Feb. 25, 2021). Under Washington law, *res judicata* "requires a concurrence of identity in four respects: (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made." *Schoeman v. New York Life Ins. Co.*, 726 P.2d 1, 3 (Wash. 1986) (citations omitted). Each of these elements is satisfied here. *Res judicata* bars the relitigation of a claim that "was litigated, that might have been litigated, or that should

---

[2] A true and accurate copy of the State Court Complaint filed by Plaintiff is attached hereto as **Exhibit B**.
[3] A true and accurate copy of the State Court Order Dismissing Cenlar FSB and Lakeview Loan Servicing, LLC from the State Court Action with Prejudice attached hereto as **Exhibit C.**

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR  97204

DEFENDANTS CENLAR FSB, LAKEVIEW LOAN SERVICING, LLC, AND FEDERAL NATIONAL MORTGAGE
ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

1    have been litigated in a prior action." *Weaver v. City of Everett*, 421 P.3d 1013, 1021 (Wash. Ct.

2    App. 2018) (citing *Loveridge v. Fred Meyer, Inc.*, 87 P.2d 898 (1995)).

3        First, concurrence of identity of subject matter exits here. Under Washington law, "[i]n

4    determining whether a party has established concurrence of identity of subject matter between two

5    claims, the critical factors are the nature of the claim or cause of action and the nature of the

6    parties.'" *Weaver*, 421 P.3d at 1022. In short, the nature of the claims involve the same allegedly

7    fraudulent foreclosure documents and incorrect 1099-C form, and Cenlar and Lakeview were

8    parties to both the State Court Action and the instant matter. While Fannie Mae was not listed as

9    a party in the State Court Action, that is legally inconsequential for reasons stated below.

10        The nature of the claims in the State Court Action and the instant matter are identical. In

11    his complaint filed in state court, Plaintiff brought claims against Lakeview, Cenlar, and other

12    defendants for Wrongful Foreclosure & DTA violations (**Ex. B** at ¶¶ 125–35); violations of the

13    Washington Consumer Protection Act (*id.* at ¶¶ 136–49); Misrepresentation (*id.* at ¶¶ 150–66);

14    Fraud (*id.* at ¶¶ 167–69); Negligence (*id* at ¶¶170–74); and Slander of Title (*id.* at ¶¶ 177) – arising

15    from the same foreclosure documents and 1099-C form at issue in Plaintiff's Amended Complaint.

16    Specifically, in the State Court Complaint, Plaintiff alleged in relevant part that the issuance of a

17    1099-C form "cancelling/discharging the debt of $152,332.91 by Federal National Mortgage

18    Association on 4-16-2018" caused Plaintiff to conclude that he "didn't owe anything more on his

19    home," (*id.* at ¶¶ 143–44). He alleged that Lakeview engaged in "unfair and deceptive practice by

20    recording a false self-servicing assignment to themselves to facilitate the foreclosure of Plaintiff's

21    property." *Id.* at ¶ 145. Plaintiff further alleged that "Defendants [] colluded and conspired to sell

22    Plaintiff's property and evict him while relying on fraudulent [foreclosure] documents," (*id.* at ¶

23    153), and that the allegedly fraudulent foreclosure documents were executed by Lakeview and

24    Trustee Corps "in order to facilitate a swift foreclosure." *Id.* at ¶ 169. Cenlar and Lakeview were

25    subsequently dismissed from the State Court Action with prejudice. **Ex. C.**

26        Second, concurrence of cause of action exists here. Under Washington law,

27    "[c]onsideration of four factors helps a court determine whether there is concurrence of cause of

28    action under the doctrine of res judicata: '(1) [w]hether rights or interests established in the prior

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR  97204

DEFENDANTS CENLAR FSB, LAKEVIEW LOAN SERVICING, LLC, AND FEDERAL NATIONAL MORTGAGE
ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

1    judgment would be destroyed or impaired by prosecution of the second action; (2) whether

2    substantially the same evidence is presented in the two actions; (3) whether the two suits involve

3    infringement of the same right; and (4) whether the two suits arise out of the same transactional

4    nucleus of facts.'" *Bank of N.Y. Mellon v. Billings*, No. 81047-2-I, 2020 Wash. App. LEXIS

5    1191, at \*6 (Wash. Ct. App. Apr. 27, 2020) (citing *Berschauer Phillips Constr. Co. v. Mut. of*

6    *Enumclaw Ins. Co.*, 175 Wn. App. 222, 230, 308 P.3d 681 (2013) (alteration in original)

7    (quoting *Kuhlman v. Thomas*, 78 Wn. App. 115, 122, 897 P.2d 365 (1995)).

8       In the State Court action, the Plaintiff's claims revolved around the same foreclosure

9    documents, the same 1099-C form, and the same parties. Plaintiff alleged the inability of

10   Lakeview and Cenlar to enforce the Note as holders (*id.* at ¶ 41–45, 69, 89–90, 113), Cenlar's

11   lack of beneficiary status under the loan (*id.* at ¶ 41–45), and the collusion of Cenlar, Lakeview

12   and other named defendants to "quickly sell his house out from under him, and steal his equity,

13   and take advantage of the confusion regarding reinstatement" (*id.* at ¶ 50, 60, 87).

14      Here, Plaintiff alleges that the same 1099-C form referenced in the State Court Action

15   (*id.* at ¶ 143–44) is fraudulent, misrepresentative, and evidences a civil conspiracy between

16   Cenlar, Lakeview, and Fannie Mae. Am. Compl. at ¶¶ 40–69. As in his State Court Complaint,

17   he alleges Fraudulent Representation (*id.* at ¶¶ 40–46); Negligent Misrepresentation (*id.* at ¶¶

18   47–52); and violations of the Washington Consumer Protection Act (*id.* at ¶¶ 53–57). Plaintiff

19   brings claims for Tort of Outrage (*id.* at ¶¶ 58–64) and Civil Conspiracy (*id.* at ¶¶ 65–69) arising

20   from the same central issues and nucleus of fact as in the State Court Action. *See Berschauer*

21   *Phillips Const. Co. v. Mut. Of Enumclaw Ins. Co.*, 308 P.3d 681, 685 (Wash. Ct. App. 2013)

22   (holding that concurrence of cause of action and subject matter existed where "[n]either lawsuit

23   [was] independent of [the] same nucleus of facts, and the rights at issue in both lawsuits [were]

24   fundamentally the same"). Specifically, he alleges that the original 1099-C "conflicts with other

25   foreclosure documents issued by the Defendants in which the Beneficiary of the Deed of Trust

26   and Note Owner/Holder is identified as defendant "Lakeview Loan Servicing, LLC, by Cenlar,

27   FSB, as Attorney in Fact" (Am. Compl. at ¶ 25) and that "[t]he IRS 1099 Forms issued by the

28   Defendants contain fraudulent information as they identify a Lender/Creditor which is foreign to

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR  97204

1   the transaction and has never appeared in any of the title-related or foreclosure-related documents
2   recorded in the public record." *Id.* at ¶ 26.  Plaintiff cannot as a matter of law relitigate the same
3   claims.  The foreclosure documents are accurate and consistent with the 1099 Forms and the state
4   court has already resolved these issues in favor of Defendants.  Thus, concurrence of cause of
5   action exists.

6          Third, concurrence of persons and parties and their quality exists here. Both the State
7   Court Action and this matter name Defendants Cenlar as servicer and Lakeview as beneficiary.
8   While Fannie Mae, the investor, was not listed as a party in the State Court Action, Washington
9   Courts have held that "[c]ourts, as a rule, view different defendants between suits as the same
10  party as long as they are in privity." *Bank of N.Y. Mellon v. Billings*, No. 81047-2-I, 2020 Wash.
11  App. LEXIS 1191, at *9 (Wash. Ct. App. Apr. 27, 2020) (quoting *Kuhlman v. Thomas*, 78 Wn.
12  App. 115, 121 (Wash. Ct. App. 1995)). "A nonparty is in privity with a party if that party
13  adequately represented the nonparty's interest in the prior proceeding."  *Bank of N.Y. Mellon v.*
14  *Billings*, 2020 Wash. App. LEXIS 1191, at *10 (quoting *Feature Realty, Inc. v. Kirkpatrick &*
15  *Lockhart Preston Gates Ellis, LLP*, 161 Wn.2d, 214, 224, 164 P.3d 500 (2007)). Accordingly,
16  Fannie Mae was in privity with Cenlar, the loan servicer, and Lakeview, the beneficiary. *See e.g.*
17  *Lee v. Thornburg Mortgage Home Loans Inc.*, No. 14-cv-00602-NC, 2014 U.S. Dist. LEXIS
18  137758, at *16–19 (N.D. Cal. Sept. 29, 2014) (holding that privity existed in a mortgage
19  foreclosure case between the loan servicer, original lender, nominee, and trustee). Concurrence
20  of the persons and parties and their quality exists.

21          Therefore, the doctrine of *res judicata* bars Plaintiff from prosecuting his claims against
22  Cenlar, Lakeview, and Fannie Mae here because the same alleged misrepresentations in
23  foreclosure documents and 1099 form were already resolved against Plaintiff with prejudice.

24          *ii. Plaintiff's Claims are Barred by Collateral Estoppel*

25          Even if Plaintiff's claims were not barred by the doctrine of *res judicata*, the Court should
26  hold that Plaintiff cannot re-litigate issues involving the same allegedly fraudulent foreclosure
27  documents and 1099 forms.  *See Weaver v. City of Everett*, 421 P.3d 1013, 1019 (Wash Ct. App.
28  2018) ("The purpose of the doctrine of collateral estoppel is to promote judicial economy by

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR  97204

- 7 -

DEFENDANTS CENLAR FSB, LAKEVIEW LOAN SERVICING, LLC, AND FEDERAL NATIONAL MORTGAGE
ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

avoiding relitigation of the same issue, to afford the parties the assurance of finality of judicial determinations, and to prevent harassment of and inconvenience to litigants.") (citations omitted).

Collateral estoppel "prevents relitigation of an issue after the party estopped has had a full and fair opportunity to present its case." *Id.* Under Washington law, "[t]he proponent of the application of the doctrine has the burden of proving four elements to demonstrate the necessity of its applicability: '(1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice.'" *Weaver v. City of Everett*, 421 P.3d 1013, 1021 (Wash. Ct. App. 2018) (quoting *Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 790 (1999). All four elements are met here.

First, in the State Court Action, an adjudication of identical issues to this instant matter regarding Defendants Cenlar, the loan servicer, and Lakeview, the creditor, was made. Cenlar and Lakeview were dismissed with prejudice by Court Order granting their Motion to Dismiss[4]– constituting a final judgment on the merits. **Ex. C**; *see also Elliot Bay Adjustment Co. v. Dacumos*, 401 P.3d 473, 477 (Wash. Ct. App. 2017) ("A dismissal with prejudice constitutes a final judgment on the merits.") (citations omitted).

In their Motion to Dismiss in the State Court Action, Cenlar and Lakeview specifically addressed the issues of (1) whether Plaintiff's Washington Consumer Protection Act claim regarding an assignment of the Deed of Trust from MERS to Lakeview being "false" and "self-servicing" stated a claim (**Ex. B** at ¶ 146; **Ex. D** at pp. 8–9); (2) whether the fraud claim regarding the assignment of the Deed of Trust from MERS to Lakeview was time barred (**Ex. B** at ¶¶ 167–69; **Ex. D** at pp. 9–11); and (3) whether, generally, Plaintiff may assert claims against Cenlar and Lakeview regarding the foreclosure sale after receiving proceeds from the sale. *See generally* **Ex. B**; **Ex. D** at pp. 11–12. The State Court granted Cenlar and Lakeview's Motion to Dismiss

---

[4] A true and accurate copy of Cenlar FSB and Lakeview Loan Servicing, LLCs' State Court Motion to Dismiss is attached hereto as **Exhibit D.**

DEFENDANTS CENLAR FSB, LAKEVIEW LOAN SERVICING, LLC, AND FEDERAL NATIONAL MORTGAGE ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

and dismissed Cenlar and Lakeview from the State Court Action with prejudice, *see* **Ex. D**, which serves as a prior adjudication on the merits. *Elliot Bay Adjustment Co. v. Dacumos*, 401 P.3d 473, 477 (Wash. Ct. App. 2017) ("A dismissal with prejudice constitutes a final judgment on the merits.").

Plaintiff cannot now seek to relitigate the issues regarding the validity of the assignment from MERS to Lakeview or assert claims against Cenlar and Lakeview regarding the foreclosure sale after receiving proceeds from the sale. Nonetheless, in his First Amended Complaint, Plaintiff does just that. He alleges that "[the] IRS Form 1099–C conflicts with other foreclosure documents issued by the Defendants in which the Beneficiary of the Deed of Trust and Note Owner/Holder is identified as defendant "Lakeview Loan Servicing, LLC, by Cenlar, FSB, as Attorney in Fact" (Am. Compl. at ¶ 25), and further asserts that "[t]he IRS 1099 Forms issued by the Defendants contain fraudulent information as they identify a Lender/Creditor which is foreign to the transaction and has never appeared in any of the title-related or foreclosure-related documents recorded in the public record." *Id.* at ¶ 26. Plaintiff alleges that the "case law of foreclosure" indicates that Mortgage Electronic Registration Systems, Inc. ("MERS") is "never a note holder," and it is an irregularity that MERS would have assigned the Deed of Trust to Lakeview (ECF No. 18 at ¶ 31). However, as emphasized in the State Court Motion to Dismiss granted by the State Court, courts have sounded rejected the notion that "MERS' participation taint[s] subsequent assignments and foreclosure actions." *Cagle v. Abacus Mortg., Inc.*, No. 2:13-cv-02157-RSM, 2014 WL 4402136, at *4 (W.D.Wash. Sept. 5, 2014) (collecting cases); *see also Worm v. Nw. Tr. Servs. of Wash.*, No. 47779-3-II, 2016 Wash. App. LEXIS 2844, at *14–16 (Wash. Ct. App. Nov. 22, 2016) (holding that MERS made a valid assignment of a Deed of Trust as the Washington Supreme Court has recognized that "the use of agents to make assignments of security instruments is valid under Washington law, so long as the agent's principal is identified") (citing *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 106–07, 285 P.3d 34 (2012)). In short, Plaintiff cannot now seek to relitigate the same issues which were raised in the State Court Motion to Dismiss and adjudicated on the merits.

Second, as stated above, Cenlar and Lakeview were parties in both the State Court Action

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR  97204

and the instant matter. Though Fannie Mae was not a named party in the State Court Action, it was in privity with Cenlar and Lakeview. *Bank of N.Y. Mellon v. Billings*, 2020 Wash. App. LEXIS 1191, at \*10 ("A nonparty is in privity with a party if that party adequately represented the nonparty's interest in the prior proceeding") (quoting *Feature Realty, Inc. v. Kirkpatrick & Lockhart Preston Gates Ellis, LLP*, 161 Wn.2d 214, 224 (2007)); *Lee v. Thornburg Mortgage Home Loans Inc.*, No. 14-cv-00602-NC, 2014 U.S. Dist. LEXIS 137758, at \*16–19 (N.D. Cal. Sept. 29, 2014) (holding that privity existed in a mortgage foreclosure case between the loan servicer, original lender, nominee, and trustee).

Third, the application of the doctrine of collateral estoppel will not work an injustice in the instant matter as Plaintiff received a "full and fair hearing" on each issue in question. *See Riste v. Estate of McAnally*, No. 35681-7-III, 2020 Wash. App. LEXIS 32, at \*21–22 (Wash. Ct. App. Jan. 9, 2020) (citations omitted). The State Court considered Plaintiff's State Court Complaint, and the Motion to Dismiss filed by Cenlar and Lakeview, before dismissing Cenlar and Lakeview with prejudice by Court Order granting their Motion to Dismiss (*see* **Ex. D**) – constituting a final judgment on the merits. **Ex. C**; *see also Elliot Bay Adjustment Co. v. Dacumos*, 401 P.3d 473, 477 (Wash. Ct. App. 2017) ("A dismissal with prejudice constitutes a final judgment on the merits.") (citations omitted).

Thus, because (1) the issues decided in the State Court Action are identical with the ones presented in this action; (2) the prior adjudication in State Court ended in a final judgment on the merits with respect to Cenlar and Lakeview; (3) Cenlar and Lakeview were parties in the State Court Action and are parties in this subsequent instant action; (4) Fannie Mae, the investor, is in privity with Cenlar, the loan servicer, and Lakeview, the beneficiary; and (5) the application of collateral estoppel does not work an injustice – the doctrine of collateral estoppel bars Plaintiff from relitigating the same issues against Cenlar, Lakeview, and Fannie Mae here.

**B.** **Plaintiff's Fraudulent Representation Claim Alleges Facts Contradicting any Fraudulent Intent.**

Plaintiff alleges that Defendants are liable for making fraudulent representations to Plaintiff. Am. Compl. at ¶¶ 40–46. However, the facts Plaintiff alleges are contrary to the notion

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR  97204

that Cenlar or other Defendants had knowledge of the alleged falsity of the statements in the IRS 1099-C Form when it was issued.  On the contrary, Cenlar acknowledged the inadvertent error and corrected it.  Thus, Plaintiff's own allegations demonstrate his failure to state a claim under controlling law.

Under Washington law, plaintiff must allege the following essential elements of fraud by clear, cogent, and convincing evidence: "(1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to who the representation is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage." *Elcon Constr., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012) (citing *Williams v. Joslin*, 65 Wn.2d 696, 697, 399 P.2d 308 (1965)).

Plaintiff does not and cannot allege he was actually *assessed* any tax liability, actually *paid* additional taxes, or incurred any personal liability due to the issuance of the original 1099-C form.  Instead, Plaintiff admits that upon contacting Defendant Cenlar, Cenlar confirmed that the original 1099-C was issued in error and would be corrected. (Am. Compl. ¶ 32).  Cenlar subsequently issued a corrected 1099-C and sent it to Plaintiff.  Ex. A; Am. Compl. ¶¶ 37–39.  Indeed, as stated above, the 1099-A Form issued to Plaintiff at the same time as the original 1099-C Form *correctly* evidenced the fact that Plaintiff received a *surplus* disbursement, consistent with the foreclosure documents. ECF No. 18-9. In other words, Plaintiff's own pleading is inconsistent with and contrary to any allegation that Cenlar or other Defendants had knowledge of the alleged falsity of the statements in the original IRS 1099-C Form when it issued.  Thus, Plaintiff's fraud claim fails and should be dismissed.

**C.    Plaintiff's Washington Consumer Protection Act Claim Fails.**

Plaintiff alleges that Defendants are liable for violations of the Washington Consumer Protection Act.  Am. Compl. ¶¶ 53–57. However, Plaintiff fails to identify the statute giving rise to a cause of action under Wash. Rev. Code § 19.86.090 or allege facts sufficient to meet the

causation and public interest impact elements of a Washington Consumer Protection Act claim.

Washington's Consumer Protection Act provides that: "Any person who is injured in his or her business or property by a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, 19.86.060 ... may bring a civil action." WASH. REV. CODE § 19.86.090. Although Plaintiff cites to WASH. REV. CODE § 19.86.090, he fails to cite which of the statutes listed above (WASH. REV. CODE § 19.86.020, WASH. REV. CODE § 19.86.030, WASH. REV. CODE § 19.86.040, WASH. REV. CODE § 19.86.050, or WASH. REV. CODE § 19.86.060) give rise to his cause of action. Thus, Plaintiff fails to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that mere labels and legal conclusions stating that the plaintiff is entitled to relief are not enough).

Further, the Court should dismiss the claim because Plaintiff fails to allege facts to satisfy the elements essential to a Washington Consumer Protection Act claim. The elements of a private CPA violation are: "(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

First, Plaintiff fails to adequately allege "causation." For reasons stated above, Plaintiff fails to prove that the filing of the 1099 forms *caused* anything. Although Plaintiff alleges that he was "exposed" to tax liability and personal liability under the Note due to the issuance of the original 1099-C form, Plaintiff fails to allege that he was *actually* experienced tax liability or *any* attempt to collect or *any* alleged debt obligation from *any* entity.  Washington courts have held that neither emotional distress nor personal injury damages are recoverable under a Washington CPA private cause of action.  *See Panag v. Farm Ins. Co. of Wash.* 204 P.3d 885, 899 (Wash. 2009) (holding that "damages for mental distress, embarrassment, and inconvenience are not recoverable under the CPA.") (citing *Keys v. Bollinger*, 640 P.2d 1077 (1982)); *Ambach v. French*, 216 P.3d 405, 408 (Wash. 2009) (holding that "[p]ersonal injury damages, however, are not compensable [damages] under the CPA and do not constitute injury to business or property").

Second, Plaintiff fails to adequately allege a "public interest impact." Plaintiff alleges that "[t]he Defendants' business involving mortgage lending, loan servicing, and nonjudicial

- 12 -

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR  97204

DEFENDANTS CENLAR FSB, LAKEVIEW LOAN SERVICING, LLC, AND FEDERAL NATIONAL MORTGAGE
ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

foreclosure have been adjudicated by Washington courts as impacting an important business interest" (Am. Compl. ¶ 55), but fails to allege that the Defendants committed allegedly unfair or deceptive acts involving Plaintiff in the past, that there is a real and substantial potential repetition of the Defendants' conduct, or that many consumer were affected/likely to be affected by this single act. *See Hangman Ridge Training Stables, Inc.*, 719 P.2d at 538 (holding that the factors relevant to establishing "public interest" are as follows: "(1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) *Were repeated acts committed prior to the act involving plaintiff?* (4) *Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff*? (5) *If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it*?") (emphasis added). On the contrary, the 1099-A form was accurate, Plaintiff received a significant surplus distribution from foreclosure, the original 1099-C form was inadvertent and corrected, and Plaintiff was never obligated or allegedly obligated for any deficiency after foreclosure.  Therefore, Plaintiff has not met his burden of alleging sufficient facts that the mere issuance of the initial 1099-C form had a "public interest impact" under *Hangman*.  Thus, Plaintiff's Washington CPA claim should be dismissed.

### D.    Plaintiff's Tort of Outrage Claim Fails.

Plaintiff alleges that Defendants are liable under a Tort of Outrage cause of action. Am. Compl. ¶¶ 58–64. However, Plaintiff fails to state a claim for failure to allege facts sufficient to show any "extreme and outrageous conduct."  The entire Amended Complaint is based on an informational 1099-C form. For reasons stated above, Plaintiff fails to prove that the 1099 form *caused* anything. Although Plaintiff alleges that he was "exposed" to tax liability and personal liability under the Note due to the issuance of the original 1099-C form, Plaintiff fails to allege that he was *actually* experienced tax liability or *any* alleged personal liability from the issuance of the original 1099-C form that Cenlar has corrected.

Under Washington law, the essential elements of a tort of outrage claim, otherwise known as intentional infliction of emotional distress, are: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR  97204

- 13 -

DEFENDANTS CENLAR FSB, LAKEVIEW LOAN SERVICING, LLC, AND FEDERAL NATIONAL MORTGAGE
ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

part of plaintiff." *Lucero v. Cenlar FSB*, No. C13-0602RSL, 2016 U.S. Dist. LEXIS 10430, at *23 (W.D. Wash. Jan. 28, 2016) (citing *Rice v. Janovich*, 742 P.2d 1230, 1238 (Wash. 1987)). To prevail on a tort of outrage claim, the conduct alleged must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized community.'" *Reyes v. Yakima Health Dist.*, 419 P.3d 819, 825 (Wash. 2018) (quoting *Grimsby v. Samson*, 85 Wn.2d 52, 59, 59 (1975) and Restatement (Second) of Torts §46 cmt. D (Am. Law Inst. 1965))). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to trigger liability. *Spicer v. Patnode*, 443 P.3d 801, 807 (Wash. Ct. App. 2019) (quoting *Snyder v. Medical Service Corp. of Eastern Washington*, 98 Wn. App. 315, 321–22 (1999), *aff'd*, 145 Wn.2d 233 (2001); *accord Strong v. Terrell,* 147 Wn. App. 376, 386 (2008).

In resolving an outrage claim, this Court recently held that "[t]he question of whether defendant's conduct was sufficiently outrageous is normally left to the jury.  However, 'it is initially for the court to determine if reasonable minds could differ on whether the conduct was sufficiently outrageous to result in liability.' Factors the court may consider in determining whether the conduct is sufficiently outrageous include: the position occupied by defendant; whether the plaintiff was particularly susceptible to emotional distress and if defendant knew that fact; the degree of the severity of the emotional distress as opposed to annoyance, inconvenience or embarrassment; and 'the actor must be aware that there is a high probability that his conduct will cause severe emotional distress and he must proceed in a conscious disregard of it.'" *Alvarez v. Target Corporation*, No. 13-CV-0150-TOR, 2013 WL 4734123 at *3 (E.D. Wash. July 10, 2013) (quoting *Phillips v. Hardwick*, 29 Wash. App. 382, 388 (1981)). Plaintiff's allegations here are deficient as a matter of law and objectively do not plausibly support a claim of outrage.

Specifically, Plaintiff asserts that Defendants issued a IRS 1099-C Form "advising the IRS that the Defendants had canceled the debt in the amount of $152,332.91 and that Plaintiff was personally liable for such amount, when the debt was paid in full," which he asserts is an "egregious act." Am. Compl. ¶ 61. Despite admitting that Cenlar issued a 1099-A Form at the

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR  97204

same time, showing the *same amount* as the surplus that Plaintiff admits he received, Plaintiff asserts that Defendants deliberately misreported the cancellation of debt and that "[Defendants'] refusal to clean up after their 'mistake' makes their conduct outrageous and intolerable in a civilized society." *Id.* Plaintiff cites *Lucero* as analogous and providing support for his tort of outrage cause of action. *Id.* at ¶ 60. However, *Lucero* is distinguishable from the instant case and does not support Plaintiff's claim against Defendants.

In *Lucero*, the Court found that the Plaintiff raised a "reasonable inference" that Defendant, "annoyed that plaintiff had sued it after obtaining a loan modification and looking for leverage to force her to abandon this litigation, adopted a strained and unprincipled analysis of the Deed of Trust to justify the imposition of unpredictable and enormous charges directly onto plaintiff's mortgage statements as 'Amounts Due.'" *Lucero*, 2016 U.S. Dist. LEXIS 10430 at *24. There the defendant allegedly (1) "charged [tens of thousands of dollars of] attorney's fees and costs to plaintiff's mortgage account and refused to explain the charges upon request," (*id.* at *1); (2) failed to timely respond to plaintiff's notice of error or request for information, (*id.* at *3–4); and (3) demanded payment of the fees and costs, and provided "only the barest information regarding the decision-making process that resulted in the imposition of [defendant's] attorney's fees and costs on plaintiff's monthly mortgage statements" at trial. *Id.*

Wholly unlike in *Lucero*, Plaintiff admits that here Cenlar's counsel acknowledged that the original 1099-C Form was issued in error and said it would be corrected, Plaintiff admits that Cenlar issued a corrected 1099-C Form, and Plaintiffs concedes that he was never charged or allegedly obligated for any debt or taxes after foreclosure.  Just like in *Alvarez*, Plaintiff here has not alleged facts that show that the conduct at issue was "extreme and outrageous."  *Alvarez*, 2013 WL 4734123 at *4 ("While Defendant's conduct may certainly be interpreted as insulting to Plaintiff's sensibilities, the Court finds that *reasonable minds could not differ* as to whether the conduct was sufficiently extreme to be utterly intolerable in a civilized society.") (emphasis added).  Thus, Plaintiff's allegations are insufficient and his outrage claim should be dismissed.

**E.    Plaintiff's Civil Conspiracy Claim Fails.**

Plaintiff alleges that Defendants are liable under a Civil Conspiracy cause of action. Am.

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR  97204

DEFENDANTS CENLAR FSB, LAKEVIEW LOAN SERVICING, LLC, AND FEDERAL NATIONAL MORTGAGE ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Compl. ¶¶ 65–69. However, Plaintiff fails to state a claim for failure to sufficiently allege any specific agreement between the defendants or how the facts are more consistent with an unlawful undertaking than with a lawful purpose.

To state a claim for civil conspiracy, a Plaintiff must allege, by "clear, cogent and convincing evidence" that "(1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy." *All Star Gas, Inc. of Wash.  v. Bechard*, 998 P.2d 367, 372 (Wash. Ct. App. 2000) (citing *Wilson v. State*, 84 Wn. App. 332, 350–51, *cert. denied*, 522 U.S. 949 (1997)). However, "the words 'clear, cogent, and convincing' mean something more than a mere preponderance of the evidence," *Lewis Pac. Dairymen's Ass'n. v. Turner*, 314 P.2d 625, 631 (Wash. 1957), and a "[m]ere suspicion of commonality of interests is insufficient to prove a conspiracy." *All Star Gas, Inc. of Wash.*, 998 P.2d at 372. Indeed, if the facts and circumstances on which the plaintiff bases his claim of civil conspiracy are "as consistent with a lawful purpose as with an unlawful undertaking," the facts are insufficient to establish a conspiracy. *Id.*  Furthermore, "[b]efore a party can be held liable as a conspirator, the evidence must show that such person entered into an agreement with the other conspirators to accomplish the object of the conspiracy." *Dart v. McDonald*, 182 P. 628, 629 (Wash. 1919).

In addition to reasons explained above, Plaintiff's conspiracy claim fails for the following independent reasons. First, Plaintiff fails to allege any meeting, conference, or other mode of communication necessary to enter into concerted, unlawful action. *See Dart*, 182 P. 628 at 629. Instead, Plaintiff asserts conclusory allegations that Defendants "combined their effort to cause the loss of Plaintiff's home through nonjudicial foreclosure, and Fannie Mae placed its name on post-sale tax reporting documents to implicate Plaintiff in certain tax liability and personal liability" and that Defendants used "documents containing false representations or representations that directly conflict with information Plaintiff received from other third-parties about the ownership of the loan, the amount of debt owed by the Plaintiff, and the applications of the sale proceeds" in furtherance of their "common design." Am. Compl. ¶¶ 66–69.  Plaintiff does not allege any purported agreement outside of the nonjudicial foreclosure process. Instead,

1    he alleges that "Defendant Lakeview declared that defendant Cenlar was acting as its agent and

2    attorney in-fact, and Defendant Fannie Mae, by placing its name on the original 1099 Tax Forms,

3    alleged Lakeview and Cenlar to undertake the actions that resulted in the sale of Plaintiff's

4    Property and the issuance of these erroneous 1099 Forms." *Id.* at ¶ 67. But this is insufficient to

5    state a civil conspiracy claim as a matter of law.  *See Alvarez*, 2013 WL 4734123 at *9 (granting

6    dismissal of civil conspiracy claim where plaintiff did not provide "any allegations that [the] two

7    entities combined to accomplish the alleged unlawful activity, much less entered an agreement

8    to do so.").

9         Plaintiff fails to allege how the facts are more consistent with an unlawful undertaking

10   than with a lawful purpose. *See All Star, Gas, Inc. of Wash.*, 998 P.2d at 372. The mere fact that

11   the Defendants were allegedly "involved" in Plaintiff's foreclosure action is grossly insufficient

12   to satisfy Plaintiff's burden to rise above the level of "[m]ere suspicion of commonality of

13   interests." *See id.*  Therefore, Plaintiff's Civil Conspiracy claim should be dismissed.

14   **V.    CONCLUSION**

15        For the foregoing reasons, the Amended Complaint filed by Plaintiff Andrey

16   Germanovich should be dismissed with prejudice, and Defendants respectfully request that the

17

18   / / /

19   / / / \

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR 97204

- 17 -

DEFENDANTS CENLAR FSB, LAKEVIEW LOAN SERVICING, LLC, AND FEDERAL NATIONAL MORTGAGE
ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

1    Court award their fees and costs incurred in bringing this motion.

2

3    DATED:        July 15, 2021.                    RESPECTFULLY SUBMITTED,

4                                                    **CENLAR FSB, LAKEVIEW LOAN**
                                                     **SERVICING, LLC, AND FEDERAL**
5                                                    **NATIONAL MORTGAGE ASSOCIATION**

6

7                                                    /s/ Román D. Hernández
                                                     Román D. Hernández, WSBA# 39939
8                                                    Troutman Pepper
                                                     100 SW Main St., Ste 1000
9                                                    Portland, OR 97204
                                                     Telephone:  (503) 290-2327
10                                                   Fax:  (503) 290-2405
                                                     Email:  roman.hernandez@troutman.com
11

12                                                   Jason E. Manning, *Admitted Pro Hac Vice*
                                                     Troutman Pepper
13                                                   222 Central Park Avenue, Suite 2000
                                                     Virginia Beach, VA 23462
14                                                   Telephone: (757) 687-7564
                                                     Fax: (757) 687-7510
15                                                   Email:  jason.manning@troutman.com

16                                                   *Attorney for Defendants Cenlar FSB, Lakeview*
                                                     *Loan Servicing, LLC, and Federal National*
17                                                   *Mortgage Association*

18

19

20

21

22

23

24

25

26

27

28

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR  97204

- 18 -

DEFENDANTS CENLAR FSB, LAKEVIEW LOAN SERVICING, LLC, AND FEDERAL NATIONAL MORTGAGE
ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

1

## CERTIFICATE OF SERVICE

2

3

I hereby certify that a copy of the foregoing *Defendants' Memorandum in Support of their Motion to Dismiss* was filed and served this 15th day of July, 2021, via U.S. Mail and E-Mail upon the following recipient:

4

5

6

*Pro se Plaintiff*
Andrey Germanovich
P.O. Box 40336
Spokane, WA 98220
agynlake@yahoo.com

7

8

9

10

/s/ Román D. Hernández
Román D. Hernández, WSBA# 39939
Troutman Pepper
100 SW Main St., Ste 1000
Portland, OR 97204
503-290-2327
roman.hernandez@troutman.com

11

12

13

14

*Attorney for Defendants Cenlar FSB, Lakeview Loan Servicing, LLC, and Federal National Mortgage Association*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Troutman Pepper Hamilton
Sanders LLP
100 SW Main St.
Suite 1000
Portland, OR  97204

117615803

- 1 -

DEFENDANTS CENLAR FSB, LAKEVIEW LOAN SERVICING, LLC, AND FEDERAL NATIONAL MORTGAGE
ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS