FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 24, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDREY GERMANOVICH, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>CENLAR FSB; LAKEVIEW LOAN SERVICING, LLC; and FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>    Defendants. | No. 2:21-CV-00141-SAB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

Before the Court is Defendants' Motion to Dismiss, ECF No. 21. The motion was considered without oral argument. Defendants are represented by Jason Manning and Roman Hernandez. Plaintiff is representing himself.[1] For the reasons discussed below, the Court grants Defendants' motion.

**Facts**

The following facts are drawn from Plaintiff's First Amended Complaint and supporting documents, ECF No. 18.

//

---

[1] Plaintiff was originally represented by counsel at the start of the litigation—however, Plaintiff's counsel withdrew from the case on July 12, 2021. ECF No. 20.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS # 1**

In 2005, Plaintiff borrowed $180,000 from Indymac Bank in order to purchase a property at 4710 South Pender Lane in Spokane ("the Property"). This $180,000 loan was secured by the Property, which Plaintiff used as his primary residence. Plaintiff alleges that, though his original loan was from Indymac Bank, he subsequently had correspondences with various other loan servicers, including OneWest, Ocwen, and Defendant Lakeview Loan Servicing. Plaintiff alleges that he was never informed that Indymac was seized by the Federal Deposit Insurance Corporation ("FDIC") or that his loan might have been securitized.

In October 2017, Plaintiff received a Notice of Default from Trustee Corps, a company that provides default and foreclosure services. This Notice of Default informed Plaintiff that his loan was in default and that a trustee's sale of the Property would be scheduled. The Notice identified the beneficial owner of the Property's Deed of Trust as "Lakeview Loan Servicing, LLC by Cenlar FSB as Attorney in Fact."

Trustee Corps set the Trustee's Sale for April 6, 2018. In its Notice of Trustee's Sale, Trustee Corps once again identified Lakeview Loan Servicing as the Current Beneficiary of the Property, though it listed the business address of Cenlar FSB.

Before the foreclosure sale, Plaintiff contacted Ocwen Loan Servicing, one of the loan servicers he had dealt with previously, to try and figure out which entity was in charge of his loan. Plaintiff alleges that Ocwen told him that "[a]s a result of the 2012 Chapter 11 Residential Capital, LLC bankruptcy filing, a portion of . . . certain related assets . . . were sold to Ocwen effective February 16, 2013." However, Ocwen made no mention of Lakeview Loan Servicing or Cenlar FSB as being involved with Plaintiff's loan.

Plaintiff alleges that, because of his inability to figure out which entity was responsible for his loan, he ended up losing his home in the foreclosure sale. On April 6, 2018, Trustee Corps sold the Property to Byron Kreck for $325,000. The

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** # 2

1  Trustee's Deed Upon Sale once again identified Lakeview Loan Servicing, LLC by
2  Cenlar FSB as Attorney in Fact as being the "holder of the indebtedness secured by
3  said Deed of Trust."
4      On May 30, 2018, Trustee Corps filed a Notice of Deposit of Surplus Funds
5  from Trustee's Sale in the Superior Court of Spokane County. The Notice of
6  Deposit stated that "[a]t the time of sale, the obligation secured by the Deed of
7  Trust amounted to $169,566.16. The cost of filing this deposit is $240.00. The
8  attorney fees are $800 and expenses are $104.16 for mailing. The surplus deposited
9  herewith is $154,289.68." Thus, based on this Notice of Deposit, Plaintiff was due
10 a refund of $154,289.69.
11     However, despite this Notice of Deposit, Plaintiff states that, in 2019, he
12 received three 1099 Forms from the IRS, informing him that an outstanding
13 mortgage balance in his name totaling $152,332.91 had been "discharged."
14 Plaintiff learned that these discharge forms had been generated in response to
15 Byron Kreck reselling the Property for $524,900. These three 1099 Forms all listed
16 Plaintiff as the Debtor for the remaining mortgage balance—however, the forms
17 contained conflicting information regarding the identity of the Creditor/Lender.
18 Form 1099-B listed Cenlar FSB as the Lender for the outstanding mortgage
19 balance.[2] But Forms 1099-A and 1099-C instead listed Defendant Federal National
20 Mortgage Association ("Fannie Mae") as the Creditor/Lender. Plaintiff alleges that
21 Forms 1099-A and 1099-C were the first documents he ever received that
22 identified Fannie Mae as an entity associated with his loan.
23     Plaintiff states that the IRS 1099 Forms and the Notice of Deposit directly
24 conflicted with one another. On one hand, the Notice of Deposit stated that

---

26 [2] Form 1099-B lists "Central Loan Administration & Reporting" as the
27 Recipient/Lender—Central Loan Administrating & Reporting is synonymous with
28 Cenlar FSB.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** # 3

Case 2:21-cv-00141-SAB    ECF No. 27    filed 11/24/21    PageID.397    Page 4 of 10

Plaintiff not only no longer owed a debt on the Property, but indeed *was owed* a refund of $154,289.69. On the other hand, the IRS 1099 Forms stated that Plaintiff still owed a $152,332.91 debt on the Property, which was subsequently discharged upon resale of the Property. Moreover, Plaintiff states that Forms 1099-A and 1099-C directly conflicted with other documents he had received throughout the foreclosure sale process, which all listed Lakeview Loan Servicing and Cenlar FSB as the loan holders.

Plaintiff alleges that, as a result of these inconsistencies, he became extremely distressed. Plaintiff states that he was left confused about (1) whether the 1099 Forms exposed him to tax liability based on the discharged debt; (2) which entity was actually responsible for his loan; (3) whether the proceeds from the foreclosure sale were paid to that entity; and (4) why the IRS Forms stated that he was liable for $152,332.91, when the Notice of Deposit stated that Plaintiff's remaining balance of $169,566.16 on the loan was paid in full after the foreclosure sale. Plaintiff stated that, in response to this confusion, he retained an attorney, Jeff Jared, to help him figure out the tax implications of the 1099 Forms.

In December 2020, Mr. Jared on behalf of Plaintiff got in touch with Defendant Cenlar FSB's general counsel. Only after this conversation did Defendant Cenlar FSB acknowledge that "the 1099-C was issued in error and will be revised immediately." However, Plaintiff alleges that, despite this assurance, Defendant Cenlar FSB did not immediately revise or withdraw the 1099 Forms.

Plaintiff alleges that, as a result of Defendants' conduct and the conflicting foreclosure documents and 1099 Forms, he has experienced financial, emotional, and physical harm. Specifically, Plaintiff alleges that he has lost time and resources to investigating and litigating this case; incurred attorney's fees and costs in excess of $30,000 to confirm that he was no longer in debt and/or did not incur any tax liability; and experienced mental distress manifesting in physical symptoms, such as headaches, stomachaches, loss of sleep, and loss of appetite. However, Plaintiff

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS # 4**

concedes that he has now received a Corrected 1099-C for the 2018 tax year, which still lists Fannie Mae as the Creditor.

## Procedural History

Plaintiff filed his Complaint on April 13, 2021. ECF No. 1. However, on June 29, 2021, the Court granted the parties' stipulation to allow Plaintiff to amend his complaint to remove his Racketeer Influenced and Corrupt Organizations Act ("RICO") claim. ECF No. 17. Thus, Plaintiff filed his First Amended Complaint on July 1, 2021. ECF No. 18. In his First Amended Complaint, Plaintiff asserted claims for (1) fraudulent representation; (2) negligent misrepresentation; (3) violations of the Consumer Protection Act; (4) tort of outrage; and (5) civil conspiracy.

On July 9, 2021, shortly after the First Amended Complaint was filed, Plaintiff's counsel filed a Motion to Withdraw as Attorney, which the Court found good cause to grant. ECF Nos. 19, 20. Defendants filed the present Motion to Dismiss on July 15, 2021. ECF No. 21. After giving *pro se* Plaintiff several months to obtain counsel, the Court reset Defendants' Motion to Dismiss for hearing without oral argument on October 15, 2021.

## Legal Standard

Rule 12(b)(6) allows a party to move for dismissal if the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal under this rule is only proper if there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a Rule 12(b)(6) motion, the court accepts the allegations in the complaint as true and construes the pleading in the light most favorable to the party opposing the motion. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). However, this does not

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS # 5**

1  require the Court "to accept as true legal conclusions couched as factual
2  allegations." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020).
3       To survive a motion to dismiss, the plaintiff must allege "enough facts to
4  state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
5  U.S. 544, 570 (2007); *see also Levit v. Yelp!, Inc.*, 765 F.3d 1123, 1135 (9th Cir.
6  2014) (requirements of notice pleading are met if plaintiff makes a short and plain
7  statement of their claims). A claim is plausible on its face when "the plaintiff
8  pleads factual content that allows the court to draw the reasonable inference that
9  the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,
10 678 (2009). The allegations must be enough to raise the right to relief above a
11 speculative level. *Twombly*, 550 U.S. at 555.

## Discussion

13      Defendants argue that the Court should dismiss Plaintiff's Amended
14 Complaint in its entirety. First, Defendants argue that the claims in Plaintiff's
15 Amended Complaint are barred by claim preclusion and/or collateral estoppel.
16 Second, Defendants argue that Plaintiff has failed to state a claim on each of his
17 pleaded causes of action: (1) fraudulent representation; (2) negligent
18 misrepresentation; (3) violations of the Consumer Protection Act; (4) tort of
19 outrage; and (5) civil conspiracy. Plaintiff has not filed a response to the motion.
20      The Court finds that the claims in Plaintiff's Amended Complaint are barred
21 by claim preclusion—specifically, by the judgment in Plaintiff's March 23, 2020
22 action in Spokane County Superior Court. When determining the preclusive effect
23 of a previous judgment, a federal court sitting in diversity must apply the forum
24 state's law. *Bates v. Union Oil Co. of California*, 944 F.2d 647, 649 (9th Cir.
25 1991). Under Washington law, claim preclusion or *res judicata* requires that the
26 first court have reached a valid and final judgment on the merits in the prior
27 lawsuit. *Matter of Marriage of Kaufman*, 17 Wash. App. 2d 497, 509 (2021).
28 Moreover, the subsequent lawsuit must involve the same (1) subject matter/cause

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** # 6

of action and (2) persons/parties and quality of persons for or against whom the claim is made. *Schoeman v. New York Life Ins. Co.*, 106 Wash. 2d 855, 859 (1986). Finally, claim preclusion applies not only to claims that were actually litigated in the prior lawsuit, but also to claims "which the parties, exercising reasonable diligence, might have brought forward at that time." *Kelly-Hansen v. Kelly-Hansen*, 87 Wash. App. 320, 329 (1997).

Here, Plaintiff's claims are precluded by his 2020 state court action. First, Plaintiff's state court action resulted in Defendants Cenlar FSB and Lakeview Loan Servicing being dismissed with prejudice, which constitutes a valid and final judgment on the merits. ECF No. 21-4; *Elliott Bay Adjustment Co. v. Dacumos*, 200 Wash. App. 208, 213 (2017) ("A dismissal with prejudice constitutes a final judgment on the merits.").

Second, the state court action and the present lawsuit have the same identity and quality of persons and parties—both matters involve Plaintiff Andrey Germanovich suing, *inter alia*, Defendants Cenlar FSB and Lakeview Loan Servicing in their roles as his loan servicer and beneficiary, respectively.[3] *See* ECF Nos. 1, 21-3.

---

[3] Although Plaintiff did not sue Defendant Fannie Mae in the state court action, Defendant Fannie Mae was in privity with Defendants Cenlar FSB and Lakeview Loan Servicing—Cenlar FSB was the loan servicer; Lakeview Loan Servicing was the beneficiary; and Fannie Mae was the lender. Thus, the element of same identity of persons/parties is still satisfied. *Kuhlman v. Thomas*, 78 Wash. App. 115, 121 (1995) ("[C]ourts, as a rule, view different defendants between suits as the same party as long as they are in privity."); *see also Lee v. Thornburg Mortg. Home Loans Inc.*, No. 14-CV-00602 NC, 2014 WL 4953966, at *6 (N.D. Cal. Sept. 29, 2014) (finding privity between a lender, nominee, and a loan servicer in a foreclosure action).

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** # 7

Finally, the state court action and the present lawsuit involve the same subject matter/causes of action. In making this determination, Washington courts consider four factors: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. *Eugster v. Washington State Bar Ass'n*, 198 Wash. App. 758, 788–89 (2017). Here, both the state court action and the present lawsuit arise out of the same transactional nucleus of facts and thus rely on substantially the same evidence. For example, both actions pertain to the foreclosure of Plaintiff's 4710 South Pender Lane property. ECF No. 18 at ¶¶ 2, 9-13; ECF No. 21-2 at ¶¶ 23, 35-48. Additionally, both actions involve Plaintiff's confusion regarding the foreclosure process and the entity responsible for his loan. ECF No. 18 at ¶¶ 11-17; ECF No. 21-2 at ¶¶ 28, 30, 42-47, 132-149. Finally, both of Plaintiff's complaints explicitly reference the Form 1099-C, though Plaintiff's present action focuses more specifically on the 1099-C. ECF No. 18 at ¶¶ 17-39; ECF No. 21-2 at ¶¶ 143-44. Though Cenlar FSB did not inform Plaintiff that the Form 1099-C was issued in error until December 2020, Plaintiff was clearly aware of the Form 1099-C at the time that he filed his state court complaint on October 12, 2020. Thus, Plaintiff exercising reasonable diligence could have brought his current claims pertaining to the Form 1099-C during his state court action.[4]

Moreover, even though Plaintiff's current action focuses more specifically on his confusion stemming from the 1099-C, both this action and the state court

---

[4] This is especially true given the fact that Jeff Jared, the attorney that Plaintiff hired to help him figure out the tax implications of the 1099 Forms, is the same attorney that filed Plaintiff's state court complaint.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** # 8

action allege infringements of the same rights and interests. Both Plaintiff's state court complaint and his current Amended Complaint assert claims for, *inter alia*, fraudulent representation; negligent misrepresentation; and violations of the Consumer Protection Act. ECF No. 21-1. Thus, allowing Plaintiff to relitigate these claims in federal court after they were dismissed with prejudice in state court would violate claim preclusion. Therefore, the Court grants Defendants' motion to dismiss.

Unless it is absolutely clear that amendment would be futile, a *pro se* litigant must be given the opportunity to amend his complaint to correct any deficiencies. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Accordingly, Plaintiff may submit a second amended complaint within **sixty (60) days** of the date of this Order. Plaintiff's amended complaint shall consist of a **short** and **plain** statement showing he is entitled to relief. Furthermore, Plaintiff shall set forth his factual allegations in separate numbered paragraphs.

This second amended complaint will operate as a complete substitute for (rather than a mere supplement to) the present complaint. The second amended complaint must be legibly rewritten or retyped in its entirety, it should be an original and not a copy, it may not incorporate any part of the original or amended complaint by reference, and **IT MUST BE CLEARLY LABELED THE "SECOND AMENDED COMPLAINT" and case number** No. 2:21-CV-00141-SAB **must be written in the caption**.

//
//
//
//
//
//
//

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS # 9**

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss, ECF No. 21, is **GRANTED**.
2. Plaintiff's Amended Complaint, ECF No. 18, is **DISMISSED**.
3. On or before **January 24, 2022**, Plaintiff shall file a Second Amended Complaint. If Plaintiff fails to comply with this Order, the action will be dismissed.

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to file this Order, provide copies to counsel and *pro se* Plaintiff, and set a case management deadline accordingly.

**DATED** this 24th day of November 2021.



_____
Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** # 10